958 N.E.2d 719 (2011)
354 Ill. Dec. 787
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Anthony LARA, Defendant-Appellant.
No. 4-08-0983.
Appellate Court of Illinois, Fourth District.
Argued May 11, 2011.
Decided September 29, 2011.
*721 Michael J. Pelletier, Karen Munoz, and Stuart H. Shiffman, all of State Appellate Defender's Office, of Springfield, for appellant.
Michael L. Stroh, State's Attorney, of Eureka (Patrick Delfino, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

OPINION
Justice POPE delivered the judgment of the court, with opinion.
¶ 1 In September 2008, a jury found defendant guilty of predatory criminal sexual assault (720 ILCS 5/12-14.1(a)(1) (West 2006)). Defendant appealed, arguing (1) section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 2006)) is unconstitutional; (2) the trial court abused its discretion by allowing the State to introduce R.K.'s videotaped statement pursuant to section 115-10 of the Code (725 ILCS 5/115-10 (West 2006)); (3) the State failed to establish defendant's guilt beyond a reasonable doubt; and (4) defendant's trial counsel was ineffective for failing to argue R.K.'s testimony at trial made her unavailable as a witness and denied defendant his right to confront witnesses against him. We affirmed. People v. Lara, 402 Ill.App.3d 257, 342 Ill.Dec. 591, 932 N.E.2d 1052 (2010).
¶ 2 The Supreme Court of Illinois denied defendant's petition for leave to appeal but issued a supervisory order (People v. Lara, ___ Ill.2d ___, 348 Ill.Dec. 392, 944 N.E.2d 345 (2011) (nonprecedential supervisory order on denial of petition for leave to appeal)) directing this court to vacate our prior judgment and reconsider our decision in light of People v. Kitch, 239 Ill.2d 452, 347 Ill.Dec. 655, 942 N.E.2d 1235 (2011). In accordance with the supreme court's direction, we vacate our prior judgment and reconsider in light of Kitch to determine whether a different result is warranted. Because Kitch does not change the result in this case, we again affirm.

¶ 3 I. BACKGROUND
¶ 4 In June 2008, a grand jury indicted defendant, charging him with predatory criminal sexual assault for committing an act of sexual penetration on R.K. between July 13, 2007, and May 7, 2008. At the time of the offense, R.K. was 5 years old (born September 16, 2002) and defendant was 25 years old. The indictment alleged defendant placed his mouth on R.K.'s vagina.
¶ 5 In June 2008, the State filed a notice of its intent to use out-of-court statements made by R.K. to Officer Eric Luckey, a Eureka police officer, on May 9, 2008, at the Child Advocacy Center in Eureka, Illinois, pursuant to section 115-10(a) of the Code (725 ILCS 5/115-10(a) (West 2006)).
¶ 6 In July 2008, a hearing was held on R.K.'s out-of-court statement. At the hearing, Officer Luckey testified he had been a police officer for 20 years. He testified he had received special training on how to interview children who are victims of sexual abuse or severe physical abuse. In April 2006, he attended a 40-hour class geared toward preparing individuals to interview children in situations such as this case. Luckey testified he received additional training in April 2007 and May 2007.
¶ 7 Officer Luckey testified these training sessions taught him the key to interviewing children is to ask open-ended, nonleading questions in an environment that is comfortable for the child. Luckey testified he typically does not know the alleged *722 facts of the case before interviewing a child so that he can avoid leading the child. Luckey testified he wants a child he is interviewing to feel comfortable and not intimidated so the child can tell him what happened.
¶ 8 According to Luckey, he had conducted between 30 and 50 interviews with children alleged to be victims of sexual or physical abuse. Luckey testified individuals observing the interview, who are not in the interview room, are able to communicate with him through a computer monitor mounted on the wall in the interview room.
¶ 9 Luckey testified he interviewed R.K., who was five at the time, at the Child Advocacy Center in Eureka in May 2008. He was the only individual in the room with R.K., but the interview was both audio- and video-recorded. The video of the interview was admitted into evidence at the hearing as People's exhibit No. 1. Luckey testified he did not believe R.K. had been coached prior to the interview.
¶ 10 In August 2008, the trial court granted the State's motion to admit R.K.'s out-of-court statement, provided R.K. testified at trial. The court found the interview contained sufficient safeguards of reliability.
¶ 11 In September 2008, at defendant's jury trial, Kathleen K. testified she is R.K.'s mother. She, R.K., and her son live in a two-story house with a basement. R.K. had her own bedroom on the first floor of the house. Kathleen's bedroom was on the second floor.
¶ 12 Kathleen testified she dated defendant between July 2007 and May 2008. She testified defendant stayed at her house during that period. According to her testimony, defendant began to stay at her house more frequently in January 2008, approximately five nights per week. She testified her children were present in the home when defendant spent nights there.
¶ 13 According to her testimony, her roommate and babysitter, Dustin Plitus, watched R.K. and her brother while Kathleen was at work. She testified most of the time, she did not leave the children alone with defendant. However, she testified he was alone with the children once or twice for approximately two hours when she went to the grocery store. Kathleen testified she left for work at 4 a.m. Dustin and defendant would be sleeping on the second floor when she left. She testified defendant had to leave her house between 5:30 and 6 a.m. to get to work.
¶ 14 Kathleen also testified defendant had an eyebrow ring, two lip rings, a labret piercing, and a tongue ring. She stated defendant usually always wore his jewelry, even while sleeping, unless he was going to church.
¶ 15 Kathleen testified R.K. told her about the allegations against defendant in the car when she and R.K. were alone. Kathleen said she and R.K. had never talked about any type of sexual matters prior to this. Kathleen called the Child Advocacy Center, which referred her to the Department of Children and Family Services (DCFS) and the police.
¶ 16 Kathleen testified R.K. still loved defendant. She testified R.K. and defendant got along well together and R.K. considered defendant her friend. She said she had never seen defendant do anything inappropriate to R.K.
¶ 17 The State called R.K. as a witness. R.K. testified people are not supposed to touch certain parts of her body. When asked which parts, R.K. pointed down. When asked what she called the part to which she pointed, she said "[b]ottom body." R.K. testified it was on the front of her body and that defendant had touched *723 her on that part of her body. When asked how many times defendant had touched her "bottom body," she said "100."
¶ 18 When asked by the State, "Did he touch you with anything else beside his hand," R.K. answered, "No." She said she told defendant to "quit it" when he touched her. R.K. testified defendant would stand and look at her when he was not touching her. R.K. testified she told her mother, while riding in the car with her, what defendant had done to R.K. When asked why she told her mom, R.K. responded, "Because he was doing something wrong."
¶ 19 R.K. said no one else had ever touched her "down there." Besides her mom and the people in the courtroom, she testified she had never told anyone else about what happened. R.K. testified defendant's hands touched her below her clothes. She also testified his hands were outside her underwear. R.K. stated defendant was not wearing facial jewelry when he touched her "down there." She said defendant did not take off any of his clothes when he touched her "down there," nor did he take off any of her clothes.
¶ 20 R.K. testified she considered defendant her friend. However, when the State asked R.K. if she liked defendant, she said no because he did something wrong.
¶ 21 Defense counsel chose to limit his cross-examination of R.K. Defense counsel did not ask her any questions about the alleged incident or any other incidents of inappropriate contact.
¶ 22 After R.K. testified, the trial court heard arguments outside the presence of the jury regarding R.K.'s videotaped statement. Defense counsel argued R.K. did not testify to the elements charged in this case. According to defense counsel, R.K.'s testimony at trial was completely different from what she told Luckey. As a result, defense counsel questioned the reliability of the videotaped interview. However, as to R.K.'s availability as a witness, the following exchange occurred:
"[TRIAL COURT]: Just so that I understand clearly your argument, Mr. Neiner, you're not arguing that her testimony was so deficient as to make her not available?
[DEFENSE COUNSEL]: Well, she was available. Just because she is testifying differently doesn't mean it's not available."
The court noted it had previously found the time, content, and circumstances of R.K.'s recorded statement to be reliable. Based on testimony the court had heard at the trial, it found R.K.'s prior statements were still reliable, even if they were inconsistent with her trial testimony. The trial then resumed.
¶ 23 Officer Luckey testified he was a police officer with the City of Eureka and had been a police officer for 20 years. Luckey testified he had received specialized training in interviewing children alleged to be victims of sexual or physical abuse. The videotaped interview and a transcript of the interview were admitted into evidence. The jurors were each provided a transcript of the videotaped statement while the videotape was played for the jury.
¶ 24 During R.K.'s interview with Luckey, Luckey asked her if there were places on her body other people should not touch. She said, "They're not supposed to lick my pee pee." When asked if anyone had ever licked her "pee pee," R.K. said, "[Defendant] did." She said sometimes defendant spent the night at her house. Luckey then asked her about what happens when defendant licks her "pee pee."
"[LUCKEY:] Can you tell me what happens when he does that?
[R.K.:] When he hurts it he licks it.

*724 [LUCKEY:] When he hurts it he licks it?
[R.K.:] Yeah. He's pretending he is kissing it but he is licking it."
R.K. said this happens in the room where she sleeps. Luckey later asked R.K. more questions about defendant licking her.
"[LUCKEY:] When he is licking your pee pee, does it happen in the daytime, night time, or some other time?
[R.K.:] Daytime.
[LUCKEY:] Daytime. And what are you usually doing before this happens? Are you in your, are you in your bedroom or are you somewhere else?
[R.K.:] When I was so tired I went to sleep in the daytime. When he just pulled down my pants and he licked my pee pee.
[LUCKEY:] He pulled down your pants and licked your pee pee. Okay. Where did he lick you when he was licking you [R.K.]?
[R.K.:] Inside my pee pee."
R.K. also stated defendant told her not to tell anybody about him licking her "pee pee." R.K. said defendant licked her "pee pee" more than one time. When asked how it felt, R.K. said:
"[R.K.:] Feels like he is stabbing me with his lip rings.
[LUCKEY:] It feels like he is stabbing you with his lip rings.
[R.K.:] Yeah.
[LUCKEY:] Does he have rings in his lips?
[R.K.:] Yeah. Right here and right here and right here."
Following Officer Luckey's testimony, the State rested.
¶ 25 Defendant called Marshall Smith, a deputy with the Woodford County sheriff's department. Deputy Smith testified he was dispatched to Kathleen K.'s home on May 9, 2008, talked to Kathleen, and took a report. He did not interview R.K. or anyone else living at the residence. Deputy Smith testified he had no further involvement with the investigation and this was normal procedure once a case had been turned over to the detective division of the department.
¶ 26 Terry Glaub testified he is a detective with the Woodford County sheriff's office and a member of the Child Advocacy Center in Woodford County. He was assigned to investigate the allegations involving R.K. Glaub also testified he requested a physical exam of R.K. be performed. Glaub testified protocols for the Child Advocacy Center call for other family members to be interviewed, with special importance placed on parents and caretakers. He stated he spoke to R.K.'s father, Tim K. Tim K. had no knowledge about the substance of R.K.'s allegations against defendant. Glaub testified he did not ask Tim K. about his relationship with defendant. Glaub observed Luckey's interview of R.K. Glaub testified there was no indication R.K. had been coached. In fact, Glaub stated R.K. said no one told her what to say.
¶ 27 The jury found defendant guilty of predatory criminal sexual assault. In October 2008, the trial court sentenced defendant to 12 years' imprisonment. In December 2008, the trial court denied defendant's posttrial motion, which alleged the trial court erred in admitting R.K.'s videotaped statement.
¶ 28 This appeal followed.

¶ 29 II. ANALYSIS

¶ 30 A. Constitutionality of Section 115-10 of the Code
¶ 31 Defendant argues section 115-10 of the Code (725 ILCS 5/115-10 (West 2006)) is unconstitutional because it "fails to incorporate *725 a blanket prohibition of testimonial statements where the defense has no opportunity to cross-examine the declarant," and it "improperly incorporates an evidentiary standard which has been specifically rejected by the United States Supreme Court" in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). These are facial challenges to the constitutionality of section 115-10 of the Code (725 ILCS 5/115-10 (West 2006)). In Kitch, the defendant raised these same arguments, and our supreme court rejected the defendant's argument section 115-10 was facially unconstitutional in light of Crawford. Kitch, 239 Ill.2d at 470, 347 Ill.Dec. 655, 942 N.E.2d at 1245.
¶ 32 A strong presumption exists legislative enactments are constitutional. Kitch, 239 Ill.2d at 466, 347 Ill.Dec. 655, 942 N.E.2d at 1243. A party who challenges the constitutionality of a statute has the burden of establishing its invalidity. Kitch, 239 Ill.2d at 466, 347 Ill.Dec. 655, 942 N.E.2d at 1243. A statute is facially constitutional if it is valid under any set of circumstances. Kitch, 239 Ill.2d at 466, 347 Ill.Dec. 655, 942 N.E.2d at 1243.
¶ 33 In Kitch, our supreme court noted "[u]nder Crawford, the confrontation clause poses no restrictions on the admission of hearsay testimony if the declarant testifies at trial and is present `to defend or explain' that testimony." Kitch, 239 Ill.2d at 467, 347 Ill.Dec. 655, 942 N.E.2d at 1244. The defendant in Kitch, like defendant in the case sub judice, argued section 115-10 is unconstitutional because it does not incorporate a blanket prohibition of testimonial statements where defendant had no opportunity to cross-examine the declarant. Our supreme court disagreed, stating "hearsay exceptions such as section 115-10 need not be coextensive with the scope of the confrontation clause to pass constitutional muster." Kitch, 239 Ill.2d at 469, 347 Ill. Dec. 655, 942 N.E.2d at 1245. The court noted "the evidentiary question whether hearsay testimony satisfies a statutory exception (such as section 115-10) is separate from, and antecedent to, the issue of whether admitting the testimony satisfies the confrontation clause." Kitch, 239 Ill.2d at 469, 347 Ill.Dec. 655, 942 N.E.2d at 1245. To be admissible, the hearsay testimony must meet both the evidentiary requirements and the constitutional requirements. As a result, the evidentiary and constitutional standards do not need to be identical. Kitch, 239 Ill.2d at 469-70, 347 Ill.Dec. 655, 942 N.E.2d at 1245.
¶ 34 As for defendant's argument section 115-10 of the Code "improperly incorporates an evidentiary standard which has been specifically rejected by the United States Supreme Court" in Crawford, the supreme court rejected this argument in Kitch. With regard to section 115-10(b)(1)'s reliability requirement, the supreme court stated "[t]his additional reliability requirement does not affect the constitutionality of section 115-10 because hearsay testimony still must satisfy Crawford's constitutional requirements, in addition to the statutory requirement of reliability." Kitch, 239 Ill.2d at 469, 347 Ill. Dec. 655, 942 N.E.2d at 1245. As a result, defendant's arguments fail.

¶ 35 B. Admission of Videotaped Hearsay Statement
¶ 36 Defendant also argues the trial court abused its discretion by allowing R.K.'s videotaped statement to be shown to the jury. Because the State is the proponent of the out-of-court statement sought to be admitted pursuant to section 115-10 of the Code (725 ILCS 5/115-10 (West 2006)), the State bore the burden of establishing the statement was "reliable and not the result of adult prompting or manipulation." People v. Sharp, 391 Ill. *726 App.3d 947, 956, 330 Ill.Dec. 949, 909 N.E.2d 971, 978 (2009).
¶ 37 We will overturn a trial court's decision to allow the admission of evidence only when the record clearly demonstrates the decision was an abuse of discretion. People v. Cookson, 215 Ill.2d 194, 204, 294 Ill.Dec. 72, 830 N.E.2d 484, 490 (2005). "`An abuse of discretion occurs when the [court's] ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view.'" Sharp, 391 Ill.App.3d at 955, 330 Ill.Dec. 949, 909 N.E.2d at 978 (quoting People v. Robertson, 312 Ill.App.3d 467, 469, 245 Ill.Dec. 151, 727 N.E.2d 404, 406 (2000)). We find the trial court did not abuse its discretion in admitting this evidence.
¶ 38 When conducting a section 115-10 hearing, the trial court examines the totality of the circumstances surrounding the hearsay statements, including the following: "`(1) the child's spontaneity and consistent repetition of the incident, (2) the child's mental state, (3) use of terminology unexpected of a child of similar age, and (4) the lack of motive to fabricate.'" Sharp, 391 Ill.App.3d at 955, 330 Ill.Dec. 949, 909 N.E.2d at 978 (quoting People v. Cookson, 335 Ill.App.3d 786, 791, 269 Ill. Dec. 335, 780 N.E.2d 807, 811 (2002), aff'd, 215 Ill.2d 194, 294 Ill.Dec. 72, 830 N.E.2d 484 (2005)). Defendant suggests R.K.'s inability to pinpoint when the sex act occurred and certain inconsistencies rendered her statement unreliable.
¶ 39 After viewing the videotape, we do not find the trial court abused its discretion in finding "the time, content, and circumstances of the statement provide sufficient safeguards of reliability" (725 ILCS 5/115-10(b)(1) (West 2006)). Officer Luckey did not direct R.K.'s answers in the interview. He asked open-ended questions, which R.K. answered. R.K. described conduct with which a typical four- or five-year-old child would not and should not be familiar. Not only did R.K. describe what defendant did, she also described how it felt. R.K. told Luckey defendant's facial jewelry hurt her "pee-pee" when he was performing oral sex on her. As she described it, it felt like he was stabbing her with his lip rings. In addition, the record contains no possible motive for R.K. to fabricate these allegations. R.K.'s mother testified R.K. still loved defendant and defendant and R.K. got along well together. Further, Luckey testified he did not believe R.K. had been coached. As a result, we will not say the trial court's pretrial ruling was fanciful, arbitrary, or unreasonable.
¶ 40 Defendant also argues the trial court should have reversed its pretrial ruling after R.K. testified at the trial because the contradictions between her testimony and her recorded interview rendered the interview unreliable. Defendant points to the fact R.K. never stated at trial defendant had penetrated her with his tongue. When asked by the State if defendant had "touched" her with any part of his body beside his hand, R.K. answered, "No." However, a five-year-old child most likely would not equate oral sex with touching. Touching for a five-year-old is done with fingers and hands. Neither the State nor defendant specifically asked R.K. whether defendant put his mouth or tongue on her vagina.
¶ 41 In this case, R.K.'s testimony at trial was not so much inconsistent with the videotaped statement as it was less complete than the previous statement. This is understandable in light of her tender years and the passage of time. Determinations of the credibility of witnesses, the weight to be given their testimony, and reasonable inferences to be drawn from the evidence lie in the province of the trier of fact, *727 herethe jury. People v. Curtis, 296 Ill. App.3d 991, 999, 231 Ill.Dec. 380, 696 N.E.2d 372, 378 (1998).
¶ 42 The jury could have found R.K.'s videotaped statement more complete and trustworthy than her trial testimony, given its proximity in time to the incident. The jury was able to assess R.K.'s credibility because it was able to observe her demeanor in the video and on the witness stand and could consider any conflicts or inconsistencies in her testimony. Nothing about her trial testimony rendered her prior statement unreliable. Thus, the trial court did not err in denying defendant's motion to reconsider its earlier ruling to admit the recorded interview. Any inconsistencies between R.K.'s trial testimony and her recorded interview affect only the weight and not the admissibility of the recorded interview. Defendant was free to, and did, argue these inconsistencies to the jury.

¶ 43 C. Ineffective Assistance of Counsel
¶ 44 To establish ineffective assistance of counsel, defendant must establish (1) his counsel's performance was so deficient the attorney was not functioning as counsel guaranteed by the sixth amendment to the United States Constitution, and (2) he was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "An attorney's performance must be evaluated from counsel's perspective at the time the contested action was taken and will be considered constitutionally deficient only if it is objectively unreasonable under prevailing professional norms." People v. Bailey, 232 Ill.2d 285, 289, 328 Ill.Dec. 22, 903 N.E.2d 409, 412 (2009).
¶ 45 Defendant argues his trial counsel was ineffective for failing to argue R.K.'s videotaped statement was inadmissible because R.K.'s testimony at trial made her unavailable as a witness and denied defendant his right to confrontation. It appears defendant contends R.K. was unavailable as a witness because her testimony provided no corroboration of the act that was the subject of her recorded statement. According to defendant, R.K.'s testimony was "insufficient to establish critical elements of the crime of predatory criminal sexual assault."
¶ 46 Although R.K. took the stand in this case and answered all of defense counsel's questions on cross-examination, defendant argues R.K.'s trial testimony created a dilemma for his trial counsel. According to defendant's interpretation of R.K.'s testimony, R.K. testified defendant did not engage in the activity described in her recorded interview, i.e., oral sex. By denying the allegations at issue in the indictment, defendant argues R.K. created a situation where defendant could not effectively cross-examine her. Defendant contends his counsel would have had to ask her to admit she made the statement to Officer Luckey, thereby implicating defendant. As a result, defendant argues R.K. was unavailable as a witness.
¶ 47 Defendant's argument fails here because it is clear R.K. was available pursuant to this court's decision in People v. Bryant, 391 Ill.App.3d 1072, 1073, 330 Ill. Dec. 678, 909 N.E.2d 391, 394 (2009). In Bryant, a jury convicted the defendant of two counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2004)). Count I alleged the defendant placed his penis in the anus of the child victim. Count II alleged the defendant placed his penis in the mouth of the child victim. Bryant, 391 Ill.App.3d at 1073, 330 Ill.Dec. 678, 909 N.E.2d at 394. Like defendant in the case sub judice, the defendant in Bryant argued on appeal the trial court erred by allowing into evidence pursuant to section 115-10 the child victim's *728 hearsay statement regarding the allegation the defendant placed his penis in the victim's mouth because the victim did not testify at trial regarding that allegation. Bryant, 391 Ill.App.3d at 1079, 330 Ill.Dec. 678, 909 N.E.2d at 398. The defendant in Bryant also argued this made the child an unavailable witness, not subject to cross-examination. As a result, defendant argued his sixth-amendment confrontation rights were violated. This court disagreed. Bryant, 391 Ill.App.3d at 1080, 330 Ill.Dec. 678, 909 N.E.2d at 399.
¶ 48 According to this court's decision in Bryant, the child victim appeared for cross-examination at defendant's trial. This court stated:
"M.S., who was then seven years old, testified at defendant's October 2005 trial at some length, although hesitantly, regarding defendant's sexual conduct with her. She said repeatedly that he put his private part in her bottom, but she did not describe any other sexual conduct by him. Specifically, she did not testify about defendant's making her put her mouth on his private part, although she spoke about that to both Eastin and Cope.
On cross-examination, M.S. answered all of the questions put to her by defense counsel. However, defense counsel made no attempt to cross-examine M.S. regarding whether his client ever made her put her mouth on his private part.
Despite M.S.'s apparent unwillingness or inability to testify on direct examination about defendant's making her put her mouth on his private part, this record demonstrates that M.S. `appeared' for cross-examination at trial within the meaning of Crawford and the confrontation clause. The key inquiry is whether she was present for cross-examination and answered questions asked of her by defense counsel. Because she was present for cross-examination and answered defense counsel's questions, the confrontation clause places absolutely no constraints on the use of M.S.'s prior statements to Eastin and Cope. * * * In other words, the question of the admissibility of those prior statements must be measured only by whether they meet the requirements of section 115-10 of the Code (725 ILCS 5/115-10 (West 2004)). For purposes of the confrontation clause, because M.S. `appeared' for cross-examination at trial within the meaning of Crawford, any of her prior statements offered at trial is a nonevent." (Emphasis in original.) Bryant, 391 Ill.App.3d at 1083, 330 Ill.Dec. 678, 909 N.E.2d at 401-02.
Like the child victim in Bryant, R.K. testified defendant touched her inappropriately and answered all of the State's and defense counsel's questions.
¶ 49 In the case at bar, defendant was not deprived of an opportunity to cross-examine R.K. She answered all of defense counsel's questions on cross-examination. Defense counsel at both trial and on appeal provide a somewhat misleading representation of R.K.'s testimony. R.K. never specifically denied defendant placed his tongue or mouth on her vagina. She was never asked this specific question by either the State or defendant. The State only asked R.K. if defendant had touched her with anything beside his hand. As we stated earlier, it is easy to see how R.K. would not equate oral sex with touching. There is no reason to believe R.K. would have refused to answer a question from defense counsel as to whether defendant put his mouth or tongue on her vagina.
¶ 50 Defendant does not argue his trial counsel was ineffective for failing to ask R.K. whether defendant put his mouth or tongue on her vagina. It appears this was a matter of strategy on the part of defense *729 counsel. Defense counsel argued to the jury the State failed to prove its case beyond a reasonable doubt because R.K. testified defendant had never touched her with anything beside his hand. Defense counsel made the following argument to the jury:
"Now, ladies and gentleman, you've heard a lot of testimony about [defendant] allegedly touching [R.K.'s] butt, putting his hand on her butt. That's not the charge here. He's not charged with touching her butt. As far as whether he's guilty or not guilty, that isn't the ultimate question. What you have to find is that [the State] has proved beyond a reasonable doubt that he put his mouth on her vagina. [R.K.] did not tell you that today. As she sat here in open court having to face everyone in the courtroom she did not tell you that happened once. In fact, she told you that didn't happen.
Ladies and gentleman, it comes down to the believability of witnesses and you believe what happened on a tape when she didn't have to face everyone, when she's in a private room with the detective who is just gathering information and not asking questions, or you believe what happened in court, or do you believe that you just can't possibly know. Is there so much of a difference that it's impossible to know exactly what happened? Because if that comes into your mind, that's reasonable doubt. When you call that kind of evidence into question, that's reasonable doubt. Like I said, ladies and gentleman, this case is riddled with it."
¶ 51 In a situation such as this, defense counsel is placed in a precarious position. In general, during any trial, an attorney does not want to ask a question if he does not know how the witness will answer. Further, an attorney surely does not want to elicit an answer that will implicate his client. However, strategic considerations such as these do not make the witness unavailable for cross-examination. In this case, R.K. was present, she answered all of the questions posed by defense counsel, and nothing in the record indicates she would not have answered any other questions defense counsel could have asked. Since we find R.K. was available for cross-examination, trial counsel's performance was not deficient. An attorney is not required to, and indeed should not, make an argument not well grounded in fact or law.
¶ 52 Our review of the supreme court's recent decision in Kitch does not cause us to stray from this court's reasoning in Bryant. The supreme court did not discuss or overrule this court's decision in Bryant either explicitly or implicitly. While the victims in Kitch offered more detailed testimony than R.K. did in the case at bar, we do not interpret our supreme court's decision in Kitch to require a victim to testify to every element of a charged offense before evidence of her hearsay statements can be admitted pursuant to section 115-10 of the Code.

¶ 53 D. Sufficiency of the Evidence
¶ 54 We next address defendant's argument the State failed to establish his guilt beyond a reasonable doubt. When reviewing a challenge to the sufficiency of the State's evidence, we view the evidence presented in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the State proved the elements of the offense beyond a reasonable doubt. People v. Schmalz, 194 Ill.2d 75, 80, 251 Ill.Dec. 489, 740 N.E.2d 775, 778 (2000).
¶ 55 The grand jury indicted defendant on the charge of predatory criminal sexual assault of a child. 720 ILCS 5/12-14.1(a)(1) (West 2006). Section 12-14.1(a)(1) of the Code states a defendant *730 "commits predatory criminal sexual assault of a child if * * * the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed." 720 ILCS 5/12-14.1(a)(1) (West 2006). Section 12-12(f) of the Code defines "sexual penetration" as "any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration." 720 ILCS 5/12-12(f) (West 2006). The indictment alleged defendant placed his mouth on R.K.'s vagina.
¶ 56 Defendant is correct that R.K.'s trial testimony alone was not sufficient to establish defendant placed his mouth on her vagina. However, the State also introduced R.K.'s recorded interview and the recorded interview was admitted as substantive evidence. In the recorded interview, R.K. stated defendant placed his mouth on her sex organ and licked inside her "pee pee." A reasonable jury could properly have found R.K.'s statement credible.
¶ 57 Defendant argues R.K.'s recorded statement contains inconsistencies, contradictions, and most of the detail in the interview came after prodding by Officer Luckey. We disagree with defendant's characterization of Officer Luckey's interview technique. As we stated earlier, Luckey asked open-ended questions, to which R.K. responded. As for the alleged inconsistencies and contradictions, the jury obviously found her statements regarding the alleged conduct credible. It is not the function of this court to second-guess the credibility determinations of the trier of fact unless we determine no reasonable jury could have come to that same conclusion. As our supreme court has stated, "it is for the fact finder to judge how flaws in part of the testimony affect the credibility of the whole" as long as its judgment is reasonable in light of the record. People v. Cunningham, 212 Ill.2d 274, 283, 288 Ill.Dec. 616, 818 N.E.2d 304, 310 (2004). In this case, we find the jury's decision to believe R.K.'s statement regarding defendant licking her "pee pee" was reasonable.
¶ 58 Defendant's argument on this issue succeeds only if the trial court erred in admitting the videotaped statement. We have found no error in admitting the statement. Thus, the video and trial testimony both constitute substantive evidence and support defendant's conviction.

¶ 59 III. CONCLUSION
¶ 60 For the reasons stated, we affirm defendant's conviction. As part of our judgment, we grant the State its $50 statutory assessment against defendant as costs of this appeal.
¶ 61 Affirmed.
Justices TURNER and STEIGMANN concurred in the judgment and opinion.