# Illinois Official Reports

## Appellate Court

---

*People v. Riggs*, 2019 IL App (2d) 160991

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEREMIAH RIGGS, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-16-0991 |
| Filed | June 19, 2019 |
| Decision Under Review | Appeal from the Circuit Court of De Kalb County, No. 13-CF-928; the Hon. Robbin J. Stuckert, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Thomas A. Lilien, and Darren E. Miller, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Richard D. Amato, State's Attorney, of Sycamore (Patrick Delfino, David J. Robinson, and Barry W. Jacobs, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Justices Jorgensen and Spence concurred in the judgment and opinion. |

¶ 1 Following a jury trial, defendant, Jeremiah Riggs, was convicted of nine counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2012)). He appeals, contending that he was deprived of his constitutional right to confront witnesses when, although the court admitted the victim's out-of-court statements describing all of the conduct with which defendant was charged, she testified at trial about only three incidents. Defendant contends that he was thus unable to effectively cross-examine her about the remaining incidents. We affirm.

¶ 2 Defendant was charged with 15 counts of predatory criminal sexual assault involving I.H. The State moved to introduce I.H.'s hearsay statements pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 2012)). At a hearing, Tracy Paszotta testified that she was I.H.'s kindergarten teacher in 2013. One day, a parent called Paszotta and said that I.H. had told the caller's daughter that I.H.'s father had inappropriately touched her. Paszotta took I.H. out of her music class and asked if anything was bothering her. After some prompting, I.H. said that her father, whom she called "Uncle Miah," had taken her and another child into the bathroom, where he made I.H. watch a pornographic movie on his phone. He then pulled down her pants and touched her. Paszotta did not ask any further questions. She returned I.H. to class and called the Department of Children and Family Services (DCFS) hotline.

¶ 3 While Paszotta waited for DCFS to call her back, the school psychologist said that I.H. had more to tell her. I.H. then said that " 'he put his finger inside [her].' " Paszotta called DCFS again and said that she needed to speak to someone right away because the students were about to be released from school. She was then connected with someone who took the report.

¶ 4 Monique Heilmeister testified that she interviewed I.H. at the Children's Advocacy Center. During the interview, I.H. said that she was lying on Aunt Angie's bed when defendant took her into the bathroom, pulled down his pants, locked the door, and "stuck his thing in [her] private part."

¶ 5 I.H. was initially unsure how old she was when this occurred but later said that it happened after her sixth birthday party in May. Defendant put his finger under her underwear, removed her clothes, and made her lie on the bed. He put his finger inside her and got on top of her and was "humping" her with his clothes off. I.H. said that when she fell asleep defendant hit and choked her. He made her suck his "private part." I.H. used a Coke bottle to show what he did. She said that this happened more than once that day. It happened only at Aunt Angie's house. When asked what defendant did to her "pee pee," she made a humping motion. When asked if anything went inside her "pee pee," she replied a finger. When asked if anything touched the skin around her "pee pee," she shook her head no. Defendant humped her neck and her back. When asked what part of her body defendant's penis touched, she pointed to the back of her neck. She also said that his penis touched her mouth and that he made her suck it. She did not remember what his penis looked like and did not see anything come out of it. However, she later said that his penis was big and long.

¶ 6 I.H. said that defendant put his penis inside her "butt" and inside her "pee pee" more than once. He made her suck his penis more than once. She thought that he said he would kill her if she told anyone what happened. He put makeup on her and almost stabbed her. Defendant had shown her sex videos before. He also made her suck his penis in the bathroom at her house in

De Kalb more than 10 times on the same day. This last happened at the De Kalb house "a long time ago." Defendant last made her suck his penis more than two months earlier.

¶ 7 The court found that the time, content, and circumstances of the statements provided sufficient safeguards of reliability. See *id.* § 115-10(b)(1). The court thus ruled them admissible, provided that I.H. testified at trial.

¶ 8 At trial, I.H. testified that she lived with her mother and defendant. Defendant touched her with his penis where she went to the bathroom. She called this body part her "pee pee." Defendant's penis also touched her butt and her mouth.

¶ 9 On cross-examination, I.H. testified that she had met several times with various people in preparation for her testimony. She had been brought into the courtroom with no one else present and told what to expect during the trial. She did not recall her kindergarten teacher asking her if anything bad was happening to her. She did not remember seeing a doctor. She did remember telling her teacher that something bad had happened to her. Paszotta and Heilmeister testified as they had at the section 115-10 hearing.

¶ 10 Detective Mark Nachman testified that defendant voluntarily went to the De Kalb police station, where Nachman interviewed him. The pair took the elevator to an interview room on the second floor. Defendant was able to walk without assistance and had no apparent difficulty with his balance.

¶ 11 Defendant was agitated at first, claiming that everyone knew what was going on but him. Nachman said that he believed that inappropriate things had happened between defendant and I.H. Defendant angrily denied the allegations, calling them "disgusting" and "gross." Nachman said that it was possible that defendant had been abused himself. Defendant calmed down and began to cry.

¶ 12 After some further questioning, defendant described an incident in which he was watching pornography and masturbating in bed when I.H. entered. I.H. asked if she could touch defendant's penis, and he agreed. Defendant said that he touched her vagina and butt with his hands and put his penis inside her mouth. This interview was not recorded. However, defendant agreed to a second, recorded interview.

¶ 13 The recorded interrogation started with Nachman reflecting that defendant had earlier claimed that he blacked out what he had done to I.H., because he was abused as a child. They discussed various incidents at houses in Yorkville and De Kalb. Defendant recounted how one day he was in bed masturbating while watching pornography on his phone when I.H. entered the room and asked what he was doing. When he replied that he was watching a movie, she asked if she could watch, and defendant agreed. I.H. then said that she always wanted to "touch one," so defendant let her touch his penis. When the movie depicted a man and woman having oral sex, I.H. asked if men like that. Defendant replied that some men like it and asked if she wanted to try. I.H. just licked it.

¶ 14 When the movie depicted a couple having sex, I.H. said that she wanted to have sex. Defendant said, " 'Okay,' " so he pulled her underwear down and rubbed his penis between her buttocks. Later, he rubbed his penis on the outside of her vagina.

¶ 15 Nachman told defendant that he wanted to tell his boss that defendant was being completely honest about what happened in Yorkville but that he had to explain certain discrepancies between defendant's and I.H.'s versions. Defendant insisted that he did not enter any "hole" but that if it did happen he did not remember.

¶ 16    Nachman retrieved a garbage can because defendant was feeling sick, and defendant continued to deny insertion. Defendant later admitted that he "might have came really close" to insertion. Eventually, defendant admitted that his penis accidentally and briefly went inside I.H.'s anus and vagina during the incident.

¶ 17    Defendant said that things first started to happen between him and I.H. at the De Kalb house. Defendant was lying naked in bed when I.H. jumped on him to play. Defendant became erect and thought that it was not right. When I.H. noticed his erect penis and asked to play with it, defendant replied, " 'Yeah, sure.' " She touched and licked it. Defendant initially recalled only one such incident in De Kalb. He did acknowledge that he "jerked off—in front of her a few times" in De Kalb. When pressed, defendant eventually admitted that they had oral sex about three times in the De Kalb house. He clarified that he remembered only one time but, because Nachman said that it was more than once, it must have been two or three times.

¶ 18    At the end of the interrogation, Nachman went to get defendant water. When he returned to the interview room, defendant was unresponsive and was subsequently taken to the hospital. Surveillance video indicated that defendant took pills while Nachman was getting him water. Nachman recovered an empty pill bottle while defendant was unconscious.

¶ 19    De Kalb County Sheriff's Deputy Naomi Faivre testified that she encountered defendant on December 13, 2013, at Kishwaukee Hospital. Defendant told Faivre, " 'I rubbed my dick on my daughter.' "

¶ 20    An emergency room physician testified that when defendant arrived at the hospital he was lethargic and minimally responsive. He tested positive for benzodiazepine (a generic term for Xanax) and tetrahydrocannabinol (THC).

¶ 21    Defendant testified that he picked up his wife's Xanax prescription on the day of the interview. Throughout the day, he ingested Xanax, smoked marijuana, and drank alcohol. He was heavily under the influence of Xanax by the time he arrived at the police station. He remembered only "bits and pieces" of the interview, was in and out of consciousness throughout the process, and did not recall signing a *Miranda* waiver. See *Miranda v. Arizona*, 384 U.S. 436 (1966). He denied ever placing his penis inside I.H. or putting his finger in her vagina.

¶ 22    The jury found defendant not guilty of six counts of penis-to-mouth predatory criminal sexual assault but guilty of four counts of penis-to-mouth predatory criminal sexual assault. The jury also found him guilty of five additional counts, including two instances of penis-to-sex-organ contact, two counts of penis-to-anus contact, and one count of finger-to-sex-organ contact. The court sentenced defendant to nine consecutive terms of seven years' imprisonment. Defendant timely appeals.

¶ 23    Defendant contends that he was deprived of his constitutional right to confront I.H. because, although the court admitted her hearsay statements accusing him of numerous offenses, she testified on direct examination about only three such incidents. Thus, defendant contends, she was not available to "defend or explain" her out-of-court statements about the other offenses. Defendant cites *People v. Learn*, 396 Ill. App. 3d 891 (2009), where we held that a witness who testified about some general information but was unable to answer substantive questions about the offense was not available to defend or explain her hearsay statements. He further cites *People v. Kitch*, 239 Ill. 2d 452 (2011), which, he claims, adopted the rationale of *Learn*.

¶ 24    The State responds that *Kitch* cited *Learn* only to distinguish it and that subsequent cases have refused to extend *Learn* beyond its specific facts. Those cases, according to the State, have uniformly held that, as long as a witness testifies at trial and is willing to answer all questions put to her, she has testified for purposes of the confrontation clause.

¶ 25    The confrontation clause of both the state and federal constitutions guarantees a defendant the right to confront his or her accusers. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. The confrontation clause bars the admission of a declarant's testimonial statements if (1) the declarant is unavailable at trial and (2) the defendant did not have a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

¶ 26    Section 115-10 of the Code provides that, in a prosecution for a physical or sexual act perpetrated upon or against a child under the age of 13, certain of the child's out-of-court statements may be admitted at trial as an exception to the hearsay rule where (1) the trial court holds a hearing outside the presence of the jury and determines the reliability of the statements and (2) the child testifies at trial or the child is unavailable and there is corroborating evidence of the act that is the subject of the statements. 725 ILCS 5/115-10(b)(1), (b)(2) (West 2012); *People v. Garcia-Cordova*, 2011 IL App (2d) 070550-B, ¶ 54. Tension between section 115-10 and the confrontation clause can arise where a child testifies but does so incompletely.

¶ 27    In *Learn*, the young witness answered some general questions but became emotionally distraught and did not answer any questions about the offense for which the defendant was on trial. *Learn*, 396 Ill. App. 3d at 896. We held that the witness was not available as a witness, stating, "We cannot conclude that a witness's mere presence in court to answer general questions without testifying about the alleged offense is sufficient to qualify as testimony pursuant to section 115-10." *Id.* at 899. We reasoned that *Crawford* required that the witness be available to " 'defend or explain' " her out-of-court statements, and the witness could not "defend or explain" her statements when she was never asked about them. (Emphasis omitted.) *Id.* (quoting *Crawford*, 541 U.S. at 59 n.9).

¶ 28    In *Kitch*, the defendant argued that, because the State did not ask the young witnesses " 'about each incident in enough detail to establish each and every element of every count,' " the defendant was unable to effectively cross-examine them. *Kitch*, 239 Ill. 2d at 460. The court held that the witnesses' direct testimony, standing alone, established the elements of the relevant counts and "largely for this reason" their direct testimony was sufficient to allow for effective cross-examination. *Id.* at 464. The court stated that *Learn* did not compel a different result. There, the victim's testimony was not incriminating and thus did not "accuse" the defendant of anything. In *Kitch*, by contrast, the witnesses " 'accused' " the defendant of multiple acts of sexual abuse. *Id.* at 465.

¶ 29    Defendant contends that *Kitch* and *Learn* created a rule that a witness must testify to each element of each count with which a defendant is charged in order for the witness's prior statements relating to those counts to be admissible. However, subsequent cases have rejected this premise, holding instead that, so long as a witness appears at trial and willingly answers all questions put to him or her, the witness is available for cross-examination.

¶ 30    In *Garcia-Cordova*, we held that, where the victim testified and willingly answered all questions, she was available for confrontation-clause purposes. In so doing, we made two preliminary observations. We noted that *Learn* required that a victim give accusatory testimony where the victim is the only witness other than the hearsay reporters who could accuse the defendant of a crime. Because Garcia-Cordova's statements to police corroborated the

- 5 -

witness's accounts, *Learn* did not even apply. We also observed that *Kitch* cited *Learn* only to distinguish it. We stated, "We reject defendant's attempt to recast his right to confront witnesses as the State's burden to confront witnesses. It is the accused who has the right to be confronted with the witnesses against him." *Garcia-Cordova*, 2011 IL App (2d) 070550-B, ¶ 61.

¶ 31    Turning to the primary issue, we observed that *Crawford* held that, where a declarant is available for cross-examination at trial, the confrontation clause places no restrictions at all on the use of the witness's prior testimonial statements. *Id.* ¶ 66 (citing *Crawford*, 541 U.S. at 59 n.9). Given that the victim in *Garcia-Cordova* had testified at trial and willingly answered all questions put to her, even though she did not testify to the substance of her hearsay statement, its admission was a constitutional "nonevent." *Id.* ¶¶ 66-69; see also *People v. Smith*, 2019 IL App (3d) 160631, ¶ 31.

¶ 32    In *People v. Sundling*, 2012 IL App (2d) 070455-B, ¶ 65, the witness, M.D.B., was not asked about the defendant's conduct that was the basis for the criminal charge. We relied on *Garcia-Cordova* to hold that the witness was nevertheless available for cross-examination. We stated:

> "The lack of an accusatory statement about past behavior is not a baseline for avoiding a confrontation problem in a memory-loss case. Moreover, M.D.B. was never asked by either the State or defense counsel whether defendant touched his private parts, and there is no reason to believe that M.D.B. would have refused to answer had he been asked that question." *Id.*

¶ 33    In *People v. Kennebrew*, 2014 IL App (2d) 121169, ¶ 35, we held that a witness was available for cross-examination where she testified and willingly answered all questions although in some instances the answer was that she could not remember. We stated that defendants "should not rely on *Learn* beyond the situation that *Learn* addressed: the situation where a child-witness, though physically present at trial, failed to provide any testimony regarding the alleged offenses—and, importantly, 'any testimony' may include testimony to a lack of memory." *Id.* In a special concurrence, Justice Schostok went further, concluding that *Learn* was wrongly decided. *Id.* ¶¶ 47-57 (Schostok, J., specially concurring).

¶ 34    Meanwhile, the Fourth District has rejected the precise argument defendant makes here. In *People v. Bryant*, 391 Ill. App. 3d 1072, 1073 (2009), the defendant was convicted of two counts of predatory criminal sexual assault alleging that he placed his penis in M.S.'s anus and mouth. The trial court admitted M.S.'s out-of-court statements describing both offenses. At trial, M.S. testified repeatedly that the defendant put his "private part in her bottom," but she did not state that he made her put her mouth on his penis. *Id.* at 1083. The court rejected the defendant's argument that M.S. was not available for cross-examination regarding the penis-to-mouth count, stating:

> "Despite M.S.'s apparent unwillingness or inability to testify on direct examination about defendant's making her put her mouth on his private part, this record demonstrates that M.S. 'appeared' for cross-examination at trial within the meaning of *Crawford* and the confrontation clause. The key inquiry is whether she was present for cross-examination and answered questions asked of her by defense counsel. Because she was present for cross-examination and answered defense counsel's questions, the confrontation clause places absolutely no constraints on the use of M.S.'s prior statements ***. *** For purposes of the confrontation clause, because M.S. 'appeared'

for cross-examination at trial within the meaning of *Crawford*, any of her prior statements offered at trial is a nonevent." *Id.*

See also *People v. Dabney*, 2017 IL App (3d) 140915, ¶ 20; *People v. Lara*, 2011 IL App (4th) 080983-B, ¶¶ 45-52.

¶ 35    Defendant contends, however, that the above-cited cases are "memory-loss" cases, to which a special set of rules applies. Defendant does not fully explain why this is so. Presumably the distinction is that in memory-loss cases the witness willingly answers all questions, albeit that the answer is sometimes that the witness cannot remember, while other cases imply an unwillingness or inability to testify about a given topic. In any event, we reject it.

¶ 36    In *Sundling*, which we referred to generally as a memory-loss case, we held that the confrontation clause was not implicated where the witness was not asked by either the prosecutor or defense counsel whether the defendant had touched the witness's private parts. *Sundling*, 2012 IL App (2d) 070455-B, ¶ 65. Further, in *Garcia-Cordova* we cited *Bryant* and *Lara* with approval. Thus, to the extent the present case differs from the memory-loss cases cited above and is a case of first impression in this district, we find that the same rationale applies, regardless of whether the witness answers that she does not recall events or whether she is simply not asked. In both situations, the witness is present and willingly answers all questions put to her by both parties. We thus follow *Bryant*, *Lara*, and *Dabney*.

¶ 37    Turning to the facts of this case, we note initially that defendant's confession corroborated I.H.'s testimony. Thus, it is doubtful that *Learn* could apply at all. Even if it could, I.H. willingly answered all questions put to her by the prosecutor and defense counsel. On direct examination, she said that defendant's penis touched her "pee pee," her butt, and her mouth. She was not asked whether defendant did these things more than once. On cross-examination, defense counsel did not ask about any of the offenses but asked only general questions. Thus, *Learn* does not apply.

¶ 38    Defendant argues that he should not be expected to have brought out details of additional offenses so that he could cross-examine I.H. about them. As we noted in *Garcia-Cordova*, however, a defendant's right to confront witnesses cannot be recast as the State's burden to confront witnesses. *Garcia-Cordova*, 2011 IL App (2d) 070550-B, ¶ 61. The confrontation clause guarantees only the opportunity for cross-examination. *Kennebrew*, 2014 IL App (2d) 121169, ¶ 40.

¶ 39    We note that defendant does not contend that I.H.'s statements to Paszotta and Heilmeister were inadmissible under section 115-10. He argues only that his right to confront witnesses was violated. Because we conclude that I.H. was available for cross-examination, her prior statements were properly admitted.

¶ 40    The judgment of the circuit court of De Kalb County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 41    Affirmed.