2024 IL App (2d) 230266-U
No. 2-23-0266
Order filed May 14, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 13-CF-928 |
| JEREMIAH RIGGS, | ) ) ) | Honorable Marcy L. Buick, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's postconviction petition did not state the gist of a claim that appellate counsel was ineffective for not challenging trial counsel's failure to argue that the victim's hearsay statements were inadmissible to the extent that they accused defendant of uncharged sexual offenses that did not relate to the elements of the charged acts. There was no prejudice to defendant because evidence of those allegedly unrelated sexual offenses was introduced at trial through defendant's confession to the police. Because there was no prejudice, we do not consider whether appellate counsel's performance was deficient.

¶ 2    Defendant, Jeremiah Riggs, appeals from the summary dismissal of his postconviction petition, contending that he stated the gist of a claim that his counsel on direct appeal was ineffective for failing to challenge in part the admission at trial of the minor victim's out-of-court

statements (see 725 ILCS 5/115-10 (West 2012)). We affirm the dismissal because defendant did not state the gist of a constitutional claim under the prejudice prong of *Strickland v. Washington*, 466 U.S. 668 (1984).

¶ 3                                    I. BACKGROUND

¶ 4      The State indicted defendant on 15 counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2012)). The named victim was I.H., defendant's daughter. All 15 counts alleged conduct occurring between January 1, 2011, and December 11, 2013, in De Kalb County. Defendant allegedly placed his penis in I.H.'s mouth (counts I through X), placed his penis in I.H.'s sex organ (counts XI and XII), placed his penis in I.H.'s anus (counts XIII and XIV), and placed his finger in I.H.'s sex organ (count XV).

¶ 5      The State filed a motion under section 115-10 of the Code of Criminal Procedure (725 ILCS 5/115-10 (West 2012)) to introduce at trial I.H.'s hearsay statements. At the hearing on the motion, Tracy Paszotta, I.H.'s kindergarten teacher, testified that, in December 2013, a parent of another student informed Paszotta that I.H. had told the other student that I.H.'s father had inappropriately touched I.H. When Paszotta questioned I.H., she told her that defendant had taken her and another child into the bathroom and made I.H. watch a pornographic film on his phone. He then pulled down I.H.'s pants and " 'touched [her].' " Paszotta returned I.H. to class and contacted the Department of Children and Family Services. Before the students were dismissed for the day, I.H. told Paszotta that defendant had " 'put his finger inside [her].' "

¶ 6      Monique Heilemeier, a forensic interviewer, testified at the hearing that, on December 11, 2013, she interviewed I.H. at the Children's Advocacy Center. A video recording and transcript of the interview were admitted into evidence. I.H. told Heilemeier of an incident in her Aunt Angie's home after I.H.'s sixth birthday party in May. I.H. was unsure how old she was when the

incident occurred. She initially stated that defendant took her into a bathroom at Aunt Angie's house, pulled down his pants, and "stuck his thing in [her] private part." She further stated that she was lying on the bed in Aunt Angie's upstairs bedroom when defendant had her go into the bathroom. Defendant then pulled down his pants and "rubb[ed] his private part." He put his finger inside I.H.'s underwear, removed her clothes, and made her lie on the bed. He then put his finger "inside [of] it," got on top of her, and "hump[ed] [her]." He also made her "suck his private part." I.H. told Heilemeier that "this" happened at Aunt Angie's house more than once that day. When asked if anything went inside her "pee-pee," I.H. said that defendant's finger did. I.H. further told Heilemeier that defendant's "pee-pee" touched her mouth, and he made her suck it. I.H. described defendant's penis as "big and long."

¶ 7 I.H. also told Heilemeier that, at Aunt Angie's house, defendant placed his penis inside her "pee-pee," placed his penis inside her butt, and made her suck his penis. I.H. said that he committed each act more than once. When Heilemeier asked I.H. if defendant committed these types of acts against her anywhere besides Aunt Angie's house, I.H. said no.

¶ 8 Later, when asked if defendant did anything to her when they lived in De Kalb, I.H. told Heilemeier that defendant made her suck his penis in the bathroom. When Heilemeier asked I.H. if this occurred more than 10 times at the De Kalb house, I.H. answered, "More times. More, more, more, more."

¶ 9 The trial court found that the time, content, and circumstances of I.H.'s out-of-court statements provided sufficient reliability safeguards under section 115-10 of the Code. See 725 ILCS 5/115-10(b)(1)(2)(A) (West 2012). The court ruled that the statements would be admissible, provided that I.H. testified at trial.

¶ 10     At trial, I.H. testified that, when she was in kindergarten, she lived with defendant and his wife, Amie Riggs. According to I.H., defendant touched his penis to her mouth, to her "pee pee," and to her butt. I.H. did not specify where those acts occurred.

¶ 11     On cross-examination, I.H. testified that she did not recall her kindergarten teacher asking her if anything bad had happened to her, nor did she remember telling her teacher that nothing bad had happened. According to I.H., when she was six years old, she lived in a house on Market Street with Amie and others. She did not know where Market Street was located. She had also lived with Amie and others at her grandfather's house in Aurora. She visited her Aunt Angie at her house in Yorkville. On redirect examination, I.H. testified that the Market Street house was in De Kalb.

¶ 12     Paszotta and Heilemeier testified as they had at the section 115-10 hearing.

¶ 13     Detective Mark Nachman of the De Kalb Police Department testified regarding his interview of defendant. A video recording and transcript of the interview were admitted at trial. During the interview, defendant admitted to several incidents of sexual conduct with I.H. in Yorkville. Those incidents included her touching and licking his penis, and his rubbing his penis between her buttocks and on the outside of her vagina. At one point, defendant admitted that his penis accidentally and briefly went inside I.H.'s anus and vagina. Defendant denied having anal or vaginal sex with I.H. in De Kalb. However, defendant told Nachman that he had masturbated in front of I.H. "a few times" in the De Kalb house and that he and I.H. had oral sex there three times.

¶ 14     At the end of the interview, Nachman went to get water for defendant. While he was gone, defendant ingested a large amount of Xanax. When Nachman returned to the interview room, defendant was unresponsive. He was taken to a hospital. Deputy Naomi Faivre of the De Kalb

- 4 -

County sheriff's office testified that, when she encountered defendant at the hospital, he told her that he had " 'rubbed [his] dick on [his] daughter.' "

¶ 15    Defendant testified that he was under the influence of Xanax when he arrived for his interview with Nachman.  He could recall only "[b]its and pieces" of the interview and did not remember signing a *Miranda* waiver (see *Miranda v. Arizona*, 384 U.S. 436 (1966)).  He denied ever putting his penis inside I.H.'s butt or vagina or placing his finger in her vagina.

¶ 16    The jury found defendant guilty of nine counts of predatory criminal sexual assault of a child: four counts of penis-to-mouth contact, two counts of penis-to-sex organ contact, two counts of penis-to-anus contact, and one count of finger-to-sex organ contact.  The jury found defendant not guilty of the remaining six counts of penis-to-mouth contact.

¶ 17    Defendant filed a posttrial motion, which was denied.  He then filed a *pro se* motion, claiming ineffective assistance of counsel (see *People v. Krankel*, 102 Ill. 2d 181 (1984)).  The trial court denied the motion, finding that defendant's claims all related to trial strategy and, therefore, he was not entitled to new counsel.

¶ 18    Defendant appealed, arguing that he was denied his right to confront I.H., as her trial testimony accused defendant of fewer offenses than her hearsay statements admitted under section 115-10 of the Code.  *People v. Riggs*, 2019 IL App (2d) 160991, ¶ 23.  According to defendant, I.H. could not be considered available for cross-examination as to the offenses she described in her statements but not in her trial testimony.  *Riggs*, 2019 IL App (2d) 160991, ¶ 23.  We rejected that contention and affirmed defendant's convictions.  *Riggs*, 2019 IL App (2d) 160991, ¶ 1.  In doing so, we noted that defendant did not dispute that I.H.'s statements to Paszotta and Heilemeier were admissible under section 115-10.  *Riggs*, 2019 IL App (2d) 160991, ¶ 39.

¶ 19    On April 28, 2023, defendant filed a *pro se* postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). The petition alleged actual innocence and raised claims of ineffective assistance of trial counsel, prosecutorial misconduct, and ineffective assistance of appellate counsel. Defendant claimed that appellate counsel was ineffective for, *inter alia*, failing to challenge the admissibility of I.H.'s hearsay statements under section 115-10. Defendant's "[v]erification of [c]ertification" was the only attachment to the petition.

¶ 20    On July 12, 2023, the trial court summarily dismissed the petition. In its written ruling, the court noted that the petition included "no affidavits or any other supportive documentation." The court added that the claims were "void of specific factual allegations that would allow the court to analyze whether [defendant] has alleged a substantial deprivation of a constitutional right or has an argument of actual innocence." Because defendant's allegations were "nonfactual, nonspecific and merely amount[ed] to conclusions," the court dismissed the petition as frivolous and patently without merit. Defendant timely appealed.

¶ 21                                II. ANALYSIS

¶ 22    On appeal, defendant contends that his petition should not have been summarily dismissed, because he stated the gist of a claim that counsel on direct appeal was ineffective for not challenging trial counsel's failure to seek exclusion of I.H.'s out-of-court statements to the extent that they referred to incidents in Yorkville. Defendant reasons that, because he was charged only with offenses in De Kalb County, I.H.'s references to the Kendall County acts were inadmissible under section 115-10.

¶ 23    The Act provides a mechanism for a criminal defendant to assert that his conviction and sentence resulted from a substantial denial of his rights under the United States Constitution, the

Illinois Constitution, or both. See 725 ILCS 5/122-1 *et seq.* (West 2022). The Act creates a three-stage process for adjudicating postconviction petitions. *People v. English*, 2013 IL 112890, ¶ 23. At the first stage, the trial court considers whether the petition is frivolous or patently without merit. *People v. Brown*, 236 Ill. 2d 175, 184 (2010). The court reviews the petition without input from the parties. *Brown*, 236 Ill. 2d at 184. The court may review the file, the transcripts, and any appellate court actions. *Brown*, 236 Ill. 2d at 184. The court treats the petition's factual allegations as true if the record does not positively rebut them. *Brown*, 236 Ill. 2d at 189.

¶ 24    Any petition deemed frivolous or patently without merit must be dismissed. See 725 ILCS 5/122-2.1(a)(2) (West 2022). A petition is frivolous or patently without merit if it has no arguable basis either in law or in fact, *i.e.*, it is based on an indisputably meritless legal theory or fanciful factual allegations. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). An example of an indisputably meritless legal theory is one that is completely contradicted by the record. *Hodges*, 234 Ill. 2d at 16.

¶ 25    A *pro se* defendant is not required to allege facts supporting all elements of a constitutional claim. *People v. Mars*, 2012 IL App (2d) 110695, ¶ 32. Because a *pro se* defendant will likely be unaware of the precise legal basis for his claim, the threshold for first-stage survival is low; the *pro se* defendant need allege only enough facts to make out a claim that is arguably constitutional. *Hodges*, 234 Ill. 2d at 9.[1]    However, the petition must clearly state how the defendant's

---

[1]Although the State asserts here that defendant's petition was properly dismissed for lack of affidavits or other supporting documents, defendant's ineffectiveness claim regarding the admission of I.H.'s statements under section 115-10 did not require any evidence beyond what

constitutional rights were violated. *Hodges*, 234 Ill. 2d at 9. We review *de novo* a first-stage dismissal of a petition. *Hodges*, 234 Ill. 2d at 9.

¶ 26 An ineffective assistance of appellate counsel claim is evaluated under the two-part *Strickland* test (see *Strickland*, 466 U.S. at 687). *English*, 2013 IL 112890, ¶ 33. Under this test, a defendant must show both that appellate counsel's performance was deficient and that there is a reasonable probability that, but for counsel's errors, the appeal would have been successful. *English*, 2013 IL 112890, ¶ 33. Appellate counsel is not required to raise issues that may reasonably be deemed unmeritorious. *English*, 2013 IL 112890, ¶ 33. We assess counsel's performance using an objective standard of competence under prevailing professional norms. *People v. Ramsey*, 239 Ill. 2d 342 433 (2010). A reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome—or put another way, that counsel's deficient performance rendered the result of the proceeding unreliable or fundamentally unfair. *People v. Evans*, 209 Ill. 2d 194, 220 (2004). The failure to satisfy either of the prongs is fatal to the claim. *People v. Logan*, 2024 IL 129054, ¶ 83. Accordingly, if a reviewing court determines that the defendant has failed to show prejudice, the court need not address the performance prong. *Logan*, 2024 IL 129054, ¶ 83. At the first stage of postconviction proceedings, a defendant need show only that he can arguably meet both prongs of the *Strickland* test. *Hodges*, 234 Ill. 2d at 17.

¶ 27 Here, we hold that defendant did not state the gist of a claim under *Strickland*'s prejudice prong. Therefore, we do not decide whether appellate counsel's performance was deficient.

---

was already present in the record. See *People v. Hall*, 217 Ill. 2d 324, 333 (2005). Thus, the State is mistaken.

¶ 28 As discussed, we assess prejudice by determining whether counsel's deficient performance rendered the result of the proceeding unreliable or fundamentally unfair. *Evans*, 209 Ill. 2d at 220. Here, the State introduced at trial defendant's statement to Nachman. In his statement, defendant admitted, in greater detail than I.H., the sexual acts that occurred at Aunt Angie's house in Yorkville. Those acts included I.H. touching and licking defendant's penis, and his rubbing his penis between her buttocks and on the outside of her vagina. At one point, defendant admitted that his penis accidentally and briefly went inside I.H.'s anus and vagina. Thus, even had trial counsel successfully argued that I.H.'s statements about the Yorkville conduct were not admissible, the trial would not likely have had a different outcome. Because the record rebuts any claim of prejudice resulting from trial counsel's failure to challenge the admission of I.H.'s statements, the postconviction petition did not state the gist of a claim that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness. Thus, the trial court properly summarily dismissed the petition.

¶ 29                                 III. CONCLUSION

¶ 30 For the reasons stated, we affirm the judgment of the circuit court of De Kalb County.

¶ 31 Affirmed.