2023 IL App (4th) 220201

NO. 4-22-0201

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 21, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Lee County |
| RICHARD L. JOHNSON, | ) | No. 21CF36 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jacquelyn Dawn Ackert, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Cavanagh and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1 Following a bench trial in the circuit court of Lee County, the trial court found

defendant, Richard L. Johnson, guilty of three counts of predatory criminal sexual assault of a

child (720 ILCS 5/11-1.40(a)(1) (West 2020)). The court sentenced defendant to 10 years in

prison on each count, with the sentences to be served consecutively. Defendant appeals. We

reverse defendant's conviction on count II. Pursuant to Illinois Supreme Court Rule 615(b)(3)

(eff. Jan. 1, 1967), we reduce the conviction on count II to aggravated criminal sexual abuse (720

ILCS 5/11-1.60(b) (West 2020)), and we remand the matter to the trial court for sentencing on

that offense. We affirm the judgment in all other respects.

¶ 2                         I. BACKGROUND

¶ 3 In February 2021, the State charged defendant with three counts of predatory

criminal sexual assault of a child, with the conduct occurring "[o]n or about March 23, 2020 and

March 27, 2020." The State alleged defendant assaulted his eight-year-old granddaughter, J.O., by inserting his finger into her vagina (count I), touching her vagina with his hand (count II), and putting her hand on his penis (count III).

¶ 4        Melissa Folkers interviewed J.O. at Shining Star Children's Advocacy Center (Shining Star) on August 14, 2020, and again on February 10, 2021. Both interviews were video-recorded. In the first interview, J.O. did not divulge any sexual assault, and she told Folkers that nothing happened with defendant that she did not like. However, in the second interview, J.O. described defendant sexually assaulting her multiple times in bathrooms and on a couch. J.O. seemed to say that the assaults all happened during one stay at defendant's home when she was about eight years old. J.O. mentioned defendant (1) showing her his "private part," (2) making her touch his "private part," (3) touching her "private part" (both over her clothes and "all the way into" her private part, and (4) kissing her like "grown up" or "married" people do. J.O. said that defendant told her to keep his conduct a secret.

¶ 5        Prior to trial, pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 2020)), the State filed a notice of intent to introduce J.O.'s February 10, 2021, interview. Section 115-10 provides a hearsay exception for out-of-court statements made by young victims of sexual assault. Relevant conditions include that (1) "[t]he court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability" (725 ILCS 5/115-10(b)(1) (West 2020)) and (2) the child testifies at trial (725 ILCS 5/115-10(b)(2)(A) (West 2020)). When the State's motion came up for hearing, the parties stipulated that both of J.O.'s recorded interviews could be admitted at trial, "pursuant to the child being available to testify." The trial court accepted that stipulation.

¶ 6        The matter proceeded to a bench trial in November 2021. J.O. was the first witness for the State. She testified on direct examination as follows. She was born in January 2012. She currently lived in Kentucky, but she did not know how long she had lived there. She was testifying in the presence of her dog to calm her. She was "[a] little bit" anxious about testifying. She remembered speaking to somebody named "Missy" at Shining Star twice. The first time J.O. spoke with Missy, J.O. talked about her family and "[t]heir names." Asked by the prosecutor what else she spoke about during that first interview, J.O. responded: "Nothing else. I don't know." J.O. testified that she then spoke with a counselor in Kentucky about what happened to her. After speaking with that counselor, J.O. spoke with Missy a second time. During that second conversation, J.O. told Missy that her "Papa" had done something to her. J.O. identified defendant in court as her Papa. J.O. testified that, in her second conversation with Missy, she told Missy that defendant did "a couple different things" to her on "[d]ifferent days." Asked by the prosecutor whether there was a reason she was "keeping it a secret," J.O. responded "[y]es," though she forgot the reason. J.O. testified that she told the truth when she spoke with Missy the second time.

¶ 7        On cross-examination, J.O. testified that she did not remember Missy asking her during the first interview whether anybody had ever touched her in a way she did not like. Questioned whether she remembered being asked during the first interview if anything she did not like ever happened with her "Grandma Rose," J.O. testified: "Yes. I just don't know." J.O. testified she remembered Missy asking her whether anything she did not like ever happened with defendant. However, J.O. did not remember what answer she provided when Missy asked that question.

¶ 8            After J.O. testified, the prosecutor asked to play the "videos," noting that the parties agreed that "they" should be presented pursuant to section 115-10 of the Code. Defense counsel told the trial court: "Yes, that is correct." The court watched J.O.'s August 14, 2020, interview and then took a lunch recess. After the recess, the State requested to play the recording of the February 10, 2021, interview. At that point, defense counsel asked the court to "reconsider its ruling pursuant to [section] 115-10." Defense counsel argued that defendant did not have a meaningful opportunity to cross-examine J.O., given that she did not testify to the details of the alleged sexual assaults. The court took a recess to review case law. Relying on *People v. Garcia-Cordova*, 2011 IL App (2d) 070550-B, the court denied defendant's "motion for reconsideration." The State then played the recording of the February 10, 2021, interview for the court.

¶ 9            Jessica Cash, who was the executive director of Shining Star, testified for the State. Without objection from the defense, the trial court accepted Cash as an expert in children's advocacy. Cash testified that it was not common for children to be interviewed twice, though she said it "does happen." Cash did not interview J.O. However, from reviewing the videos, Cash believed that J.O.'s disclosure in the second interview was age-appropriate and not coached. Cash attributed to anxiety J.O.'s failure to disclose the assaults during the first interview. On cross-examination, defense counsel questioned Cash about J.O.'s demeanor and speech patterns in the first interview versus the second. Cash acknowledged on cross-examination that she did not know anything about the counseling J.O. attended between her first and second interviews.

¶ 10           Rosemarie Hersey, J.O.'s great-grandmother, also testified for the State. According to Hersey, in August 2020, J.O. made certain statements to her. The trial court allowed evidence of those statements to prove the effect on the listener, not for the truth of the

matters asserted. Hersey testified that J.O. did not want to bathe alone. J.O. told Hersey that (1) J.O. and defendant had a secret, (2) defendant would show her his private parts, (3) defendant would put his tongue in her mouth, and (4) J.O. wanted defendant to stop. Hersey relayed this information to J.O.'s mother later that evening.

¶ 11        The State's last witness was Shane Miller, a detective sergeant for the Lee County Sheriff's Office. Miller testified that J.O.'s mother informed him that J.O. made certain accusations. During the course of the investigation, Miller learned defendant's address.

¶ 12        Defendant's wife, Deborah Johnson, testified for the defense. She testified that J.O. and J.O.'s brother stayed overnight at Johnson's and defendant's home from March 23 to March 27, 2020. Johnson testified that J.O. had one bath during that visit, on March 23. According to Johnson, while she bathed the children, defendant was in the living room watching television. Johnson testified that she did not leave the children in defendant's supervision during the March 2020 visit. On cross-examination, Johnson denied telling her son, Nicholas O., that she wished she had checked on J.O. herself rather than having defendant do so.

¶ 13        Defendant testified on his own behalf. His testimony was similar to Johnson's. Defendant remembered watching television while Johnson bathed the children. He denied sexually assaulting J.O.

¶ 14        Nicholas O. testified for the State in rebuttal. According to Nicholas, on August 9 or 10, 2020, he had a phone conversation with his mother, Johnson, about the events of March 2020. According to Nicholas, Johnson told him she was in the kitchen making dinner and she asked defendant to check on the kids in the bathtub. In surrebuttal, Johnson denied making that statement to Nicholas.

¶ 15　　　　The trial court found defendant guilty of all three charges. In addressing J.O.'s

failure to disclose defendant's conduct during her initial interview at Shining Star, the court

made the following comments that defendant argues on appeal were improper:

> "Having raised five children myself, I understand how children talk; how
>
> they tell stories and at what different ages their communication skills develop.
>
> The mere fact that [J.O.] didn't make a disclosure in the first video does not mean
>
> that something didn't happen. It means that [J.O.] herself was not comfortable
>
> telling the story at that time."

The court determined that defendant and Johnson had reasons to lie about the assaults, whereas

J.O. did not.

¶ 16　　　　In his posttrial motion, one of the issues defendant raised was that the trial court

erroneously admitted the recording of J.O.'s second interview, because J.O. "gave only very

limited in-court testimony." Defendant raised no challenge to the above-mentioned remarks the

court made when finding defendant guilty. The court denied defendant's posttrial motion.

¶ 17　　　　The trial court sentenced defendant to 10 years in prison on each of the three

counts, with the sentences to be served consecutively. After the court denied his motion to

reconsider the sentence, defendant filed a timely notice of appeal.

¶ 18　　　　　　　　　　　　　　　II. ANALYSIS

¶ 19　　　　On appeal, defendant challenges the sufficiency of the evidence as to count II. He

also argues that J.O.'s February 10, 2021, interview should not have been admitted into evidence

pursuant to section 115-10 of the Code. Finally, defendant argues that the trial court improperly

relied on its personal knowledge and evidence outside the record when finding him guilty.

¶ 20　　　　　　　　　　　　　A. Sufficiency of the Evidence

¶ 21    Defendant challenges the sufficiency of the evidence as to count II. That count alleged defendant committed predatory criminal sexual assault of a child by committing an act of sexual contact: specifically, touching J.O.'s vagina with his hand. According to defendant, J.O.'s statement in the February 10, 2021, interview that defendant touched her over her clothes did not constitute "contact" for purposes of the offense of predatory criminal sexual assault of a child.

¶ 22    The State concedes error on this point but asks us to exercise our authority under Illinois Supreme Court Rule 615(b)(3) (eff. Jan. 1, 1967) to reduce defendant's conviction to the lesser-included offense of aggravated criminal sexual abuse (720 ILCS 5/11-1.60 (West 2020)). In his reply brief, defendant acknowledges we have discretion under the circumstances to reduce the conviction as requested by the State. However, defendant asks us not to do so, because (1) the State's evidence was "extremely weak" and (2) his age and poor health make it unlikely he will survive the existing sentences on the other two counts.

¶ 23    "When considering a challenge to the sufficiency of the evidence, a reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the required elements of the crime beyond a reasonable doubt." *People v. Sauls*, 2022 IL 127732, ¶ 52. We will not reverse a conviction "unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Sauls*, 2022 IL 127732, ¶ 52.

¶ 24    Section 11-1.40(a)(1) of the Criminal Code of 2012 provides:

"(a) A person commits predatory criminal sexual assault of a child if that person is 17 years of age or older, and commits an act of contact, however slight, between the sex organ or anus of one person and the part of the body of another

for the purpose of sexual gratification or arousal of the victim or the accused, or an act of sexual penetration, and:

(1) the victim is under 13 years of age[.]" 720 ILCS 5/11-1.40(a)(1) (West 2020).

Although "contact" is not defined in the statute, courts have construed that word to mean "any touching." *People v. Kitch*, 2019 IL App (3d) 170522, ¶ 51. Given the State's concession that the evidence pertaining to count II was insufficient to sustain a conviction for predatory criminal sexual assault of a child, we reverse defendant's conviction.

¶ 25 The appellate court has the authority to reduce a conviction to an uncharged lesser-included offense. *People v. Kennebrew*, 2013 IL 113998, ¶ 25. Here, the parties agree that aggravated criminal sexual abuse is a lesser-included offense of what the State alleged in count II. See *Kennebrew*, 2013 IL 113998, ¶ 41 (noting that courts apply the charging instrument approach to determine "whether an uncharged offense is a lesser-included offense of a charged offense"). The parties also agree that the evidence was sufficient to sustain a conviction for aggravated criminal sexual abuse. The only dispute is whether the circumstances warrant exercising our discretion to impose a conviction for that offense.

¶ 26 We determine that reducing the degree of defendant's conviction is appropriate. A defendant "has no right to an acquittal when the evidence, while insufficient to establish the greater offense, is sufficient to establish the lesser offense." *Kennebrew*, 2013 IL 113998, ¶ 43. Contrary to what defendant argues, the evidence at trial was not extremely weak. The trial court credited J.O.'s allegations, and the record contains no hint of a motive for J.O. to accuse defendant falsely. Emphasizing his age, health, and existing sentences on counts I and III, defendant also argues it would be a "waste of judicial resources" to resentence him on an

additional count. We cannot agree. We have no way of knowing how long defendant will live. Even if it is unlikely defendant will survive his sentences on counts I and III, that would not necessarily make it a waste of judicial resources to sentence him on count II. "Criminal punishment serves four key purposes: (1) retribution, (2) deterrence, (3) incapacitation, and (4) rehabilitation." *People v. Wheeler*, 2019 IL App (4th) 160937, ¶ 37. Although the purpose of rehabilitation might not be served by imposing an additional sentence, the purposes of retribution, deterrence, and incapacitation could be served.

¶ 27　　　　Pursuant to Illinois Supreme Court Rule 615(b)(3) (eff. Jan. 1, 1967), we reduce the conviction on count II to aggravated criminal sexual abuse (720 ILCS 5/11-1.60(b) (West 2020)), and we remand the matter to the trial court for sentencing on that offense.

¶ 28　　　　　　　　B. Admission of the February 10, 2021, Interview

¶ 29　　　　Defendant next challenges the admission of the February 10, 2021, interview on three separate grounds. He argues that the trial court committed plain error by accepting his stipulation to the admissibility and reliability of the interview. He also contends that his counsel was ineffective for stipulating to the admissibility and reliability of the interview. Finally, defendant argues that the court violated his confrontation rights.

¶ 30　　　　　　　1. *Whether the Court Erroneously Accepted the Stipulation*

¶ 31　　　　Defendant maintains that the trial court erred by accepting his stipulation to the admissibility and reliability of the February 10, 2021, interview. Defendant argues that the court instead should have independently determined the reliability of J.O.'s statement before allowing the State to introduce that statement. In presenting this argument, defendant invokes the reasoning of cases involving determinations of whether a person is fit to stand trial. Defendant asks us to review this claim pursuant to both prongs of the plain-error doctrine.

¶ 32		The State responds that the trial court did not err by accepting the stipulation. According to the State, defendant waived his right to a hearing by making the stipulation. The State also asserts that "any constitutional due process concerns are already contained in the statute," as the statute's requirements satisfy the sixth amendment. See U.S. Const., amend. VI. If we find persuasive defendant's argument that the court erroneously accepted the stipulation, the State asks us to "remand the matter to the trial court to determine whether it would have admitted the hearsay statements into evidence."

¶ 33		We hold that the invited-error doctrine precludes defendant from arguing that the trial court improperly accepted his stipulation. See *People v. Moore*, 2021 IL App (2d) 200407, ¶ 37 (*sua sponte* raising the issue of invited error). Pursuant to the invited-error doctrine, " 'an accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error.' " *People v. Harvey*, 211 Ill. 2d 368, 385 (2004) (quoting *People v. Carter*, 208 Ill. 2d 309, 319 (2003)). To that end, "when a defendant procures, invites, or acquiesces in the admission of evidence, even though the evidence is improper, she cannot contest the admission on appeal." *People v. Bush*, 214 Ill. 2d 318, 332 (2005). The invited-error doctrine may apply even where the defendant alleges that the subject evidence violated his or her constitutional rights. See *People v. Palomera*, 2022 IL App (2d) 200631, ¶¶ 52-53 (holding that the invited-error doctrine barred the defendant from arguing that certain evidence violated his confrontation rights).

¶ 34		Here, the trial court set the matter for a hearing on the State's request to admit J.O.'s out-of-court statement pursuant to section 115-10 of the Code. Instead of proceeding with that hearing, defendant stipulated that J.O.'s statement met the statutory requirements. Having requested the court to accept this stipulation, defendant may not challenge the court's action as

plain error. See *People v. Rottau*, 2017 IL App (5th) 150046, ¶¶ 64-65 (determining that, because the defendant acquiesced to the procedure, he could not argue on appeal that the trial court committed plain error by failing to hold a section 115-10 hearing).

¶ 35            The cases defendant cites involving fitness to stand trial do not change our analysis. "The due process clause of the fourteenth amendment bars prosecuting a defendant who is unfit to stand trial." *People v. Cook*, 2014 IL App (2d) 130545, ¶ 12. If there is a *bona fide* doubt as to fitness, case law requires courts to be "active" rather than "passive" participants when determining fitness. *Cook*, 2014 IL App (2d) 130545, ¶ 14. By contrast, a decision to admit out-of-court statements pursuant to the hearsay exception in section 115-10 of the Code has no constitutional implications, so long as the declarant testifies at trial. See *People v. Kitch*, 239 Ill. 2d 452, 467 (2011) (explaining that "the confrontation clause poses no restrictions on the admission of hearsay testimony if the declarant testifies at trial and is present to defend or explain that testimony" (internal quotation marks omitted)); *People v. Sharp*, 391 Ill. App. 3d 947, 953 (2009) (explaining that, because the declarant appeared for cross-examination, the introduction of her hearsay statements "did not implicate the confrontation clause"). Here, defendant stipulated to the reliability of J.O.'s out-of-court statement when the parties expected that J.O. would be subject to cross-examination at trial. Thus, when the trial court accepted defendant's stipulation, there was no issue of constitutional magnitude for the court to address. Accordingly, defendant's reliance on reasoning unique to fitness cases is misplaced, and the invited-error doctrine precludes him from challenging a ruling that he procured.

¶ 36                                        2. *Whether Counsel Was Ineffective*

¶ 37            Defendant next argues that his counsel was ineffective for stipulating to the admissibility and reliability of the February 10, 2021, interview, because the State could not have

met its burden had the trial court held a section 115-10 hearing. The State preliminarily questions whether this matter is ripe for adjudication and/or better left for postconviction proceedings. The State also argues that defendant cannot show prejudice from his counsel's actions. On that point, the State maintains that, had the matter proceeded to a section 115-10 hearing, the court would have deemed J.O.'s out-of-court statement reliable.

¶ 38     We first determine that defendant's claim is ripe for review. The State questions ripeness only in the event that we accept defendant's preceding plain-error argument and remand the matter to the trial court for a section 115-10 hearing. Having held that defendant may not argue plain error because he invited any error, there is no ripeness problem. Although inviting a ruling precludes a plain-error challenge to that ruling, a defendant may still argue that his counsel was ineffective for inviting the ruling. See *People v. Page*, 2022 IL App (4th) 210374, ¶ 27.

¶ 39     With respect to the State's other preliminary argument, our supreme court has cautioned that a reviewing court should refrain from addressing an ineffective-assistance claim on direct review "only when the record is incomplete or inadequate for resolving the claim." *People v. Veach*, 2017 IL 120649, ¶ 46. Here, the State proposes that "it is unknown why trial counsel stipulated" to the reliability of J.O.'s out-of-court statement. We discern no impediment to addressing defendant's claim on direct appeal. See *People v. Myles*, 2020 IL App (4th) 180652, ¶¶ 43-54 (addressing a similar claim on direct appeal). The obvious reason for defense counsel stipulating to the reliability of J.O.'s statement rather than proceeding with the scheduled section 115-10 hearing was that counsel determined the trial court would likely admit that statement. Accordingly, we turn to the merits of defendant's argument that his counsel's stipulation constituted ineffective assistance.

¶ 40　　　　　Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Generally, to sustain a claim of ineffective assistance, a defendant must show that his counsel's performance was deficient and that such deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient where he or she made errors that were so serious that he or she "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant establishes prejudice where "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. In that respect, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Where a defendant argues ineffective assistance for the first time on appeal, our review is *de novo. People v. Merriweather*, 2022 IL App (4th) 210498, ¶ 40.

¶ 41　　　　　One of the requirements for admitting a child's out-of-court accusation of sexual assault is that "the time, content, and circumstances of the statement provide sufficient safeguards of reliability." 725 ILCS 5/115-10(b)(1) (West 2020). In evaluating the reliability of a statement, a court should consider the totality of the circumstances. *People v. Lara*, 2011 IL App (4th) 080983-B, ¶ 38. Relevant factors include " '(1) the child's spontaneity and consistent repetition of the incident, (2) the child's mental state, (3) use of terminology unexpected of a child of similar age, and (4) the lack of motive to fabricate.' " *Lara*, 2011 IL App (4th) 080983-B, ¶ 38 (quoting *Sharp*, 391 Ill. App. 3d at 955). Typically, the trial court evaluates before trial the reliability of the child's statement. If the defendant later challenges that ruling on appeal, the

reviewing court will not reverse unless the ruling was an abuse of discretion. *Lara*, 2011 IL App (4th) 080983-B, ¶ 37.

¶ 42　　　　In challenging the reliability of J.O.'s statement in the February 10, 2021, interview, defendant raises many of the points his counsel highlighted in closing argument. For example, defendant mentions that J.O. denied in the August 14, 2020, interview that defendant did anything she did not like. Defendant also notes that between the first interview and February 10, 2021, J.O. received counseling from an unknown individual with unknown qualifications. Defendant further identifies perceived differences in J.O.'s speech and demeanor in the two interviews that he insists cast doubt on the veracity of her accusations in the second interview.

¶ 43　　　　The trial court found these arguments unavailing after a bench trial, so it seems certain defendant would have had no more success had his counsel raised them at a section 115-10 hearing before trial. We hold that defendant cannot satisfy either prong of *Strickland*, because J.O.'s statements were sufficiently reliable to justify their admission into evidence.

¶ 44　　　　J.O. was eight years old in August 2020 when she spontaneously told her great-grandmother that defendant showed her his private parts and put his tongue in her mouth. During the initial interview at Shining Star on August 14, 2020, J.O. denied being assaulted by anybody. However, that does not necessarily make her detailed allegations in the February 10, 2021, interview unreliable. See *Rottau*, 2017 IL App (5th) 150046, ¶¶ 57-59 (upholding a finding that accusations made in a second interview were reliable even though the accuser denied in her first interview being abused). In the February 10, 2021, interview, J.O. explained that defendant told her to keep his conduct a secret. J.O. also explained that she was initially mad at her great-grandmother for telling her parents when she first disclosed defendant's conduct. Those

circumstances reasonably explain why J.O. did not discuss the assaults when she was interviewed at Shining Star the first time.

¶ 45　　　　　We reject defendant's suggestion that any differences in J.O.'s speech and demeanor between the two interviews rendered J.O.'s accusations against defendant unreliable. In her second interview, J.O. described things a child her age would be unlikely to think of unless they were true, such as feeling pain upon being penetrated. The record also contains no hint of a possible motive for J.O. to accuse defendant falsely. For example, there was no indication of hostility within J.O.'s family that could have motivated an adult to encourage J.O. to implicate defendant falsely. The fact that J.O. attended counseling between her two interviews likewise does not render J.O.'s accusations unreliable. J.O.'s parents did what any reasonable parents would do by enrolling her in counseling after she disclosed her grandfather's conduct. The trial court was aware that J.O. attended counseling between her interviews yet still found her accusations credible.

¶ 46　　　　　We determine that, under the totality of the circumstances, J.O.'s out-of-court statement in the February 10, 2021, interview was sufficiently reliable to justify its admission pursuant to section 115-10 of the Code. Had defense counsel not stipulated to the admission of this evidence, it is virtually certain the trial court would have allowed the evidence anyway. Thus, defense counsel pursued a reasonable trial strategy by stipulating to the admission of the evidence and then attempting to discredit it at a bench trial. Defendant has not met either prong of *Strickland*.

¶ 47　　　　　　3. *Whether the Court Violated Defendant's Confrontation Rights*

¶ 48　　　　　Defendant further argues that the trial court violated his confrontation rights by admitting the February 10, 2021, interview into evidence. In defendant's view, before J.O.'s

out-of-court statement could be admitted, J.O. was required to detail the assaults on direct examination. The State responds that defendant's argument is against the great weight of Illinois authority.

¶ 49 Pursuant to the confrontation clause of the sixth amendment to the United States Constitution (U.S. Const., amend. VI), testimonial statements of a witness who does not appear at trial are inadmissible unless (1) the witness was unavailable to testify and (2) the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). Here, the parties do not dispute that J.O.'s statement in her February 10, 2021, interview was testimonial. Defendant also had no opportunity to cross-examine J.O. before trial. Thus, the question is whether J.O.'s testimony was so bereft of content that she failed to "appear" at trial and was an "unavailable" witness. We review for an abuse of discretion the trial court's decision as to whether a witness was available. *In re Brandon P.*, 2014 IL 116653, ¶ 45.

¶ 50 In *People v. Bryant*, 391 Ill. App. 3d 1072, 1083 (2009), we said that the key inquiry is whether the declarant was "present for cross-examination and answered questions asked of her by defense counsel." See also *Lara*, 2011 IL App (4th) 080983-B, ¶ 48 (determining that the complaining witness appeared for cross-examination where she answered all questions asked of her at trial). Where an accuser answers all questions at trial and the defense declines the opportunity to question the accuser about her out-of-court accusations, the defendant cannot complain that the accuser was unavailable for cross-examination. See *People v. Graves*, 2021 IL App (5th) 200104, ¶ 43 (explaining that the confrontation clause is satisfied if the declarant appears for cross-examination, even if the declarant does not testify to the conduct giving rise to the defendant's charges). But see *Brandon P.*, 2014 IL 116653, ¶ 47 (affirming a trial court's finding that a witness was unavailable where she "could barely answer the trial court's

preliminary questions, and then completely froze when the State attempted to begin its direct examination of her"). Here, J.O. answered all questions posed to her at trial. Neither "youth" nor "fear" prevented her from answering questions. *Brandon P.*, 2014 IL 116653, ¶ 47. Thus, defendant's failure to question J.O. about her out-of-court allegations when he had the opportunity to do so does not mean that J.O. did not "appear" at trial, nor does it make her an "unavailable" witness. Although defendant argues that *Graves* was "wrongly decided," we determine that *Graves* is consistent with other case law, including *Bryant*, *Lara*, and *Brandon P.*

¶ 51 Defendant relies heavily on the Second District's decision in *People v. Learn*, 396 Ill. App. 3d 891 (2009). In *Learn*, a divided court opined that a witness did not testify for purposes of section 115-10 of the Code where she did not provide accusatory testimony; in the court's view, "[i]mmaterial or general background 'testimony' is not sufficient." *Learn*, 396 Ill. App. 3d at 900. Notably, however, the court in *Learn* did not purport to ground its decision in constitutional law. See *Learn*, 396 Ill. App. 3d at 899 (stating that its "analysis is not a confrontation clause analysis"). Furthermore, some courts have disagreed with *Learn*. See *Graves*, 2021 IL App (5th) 200104, ¶ 39 (stating that *Learn* has received "extensive negative treatment" by Illinois courts and has never been cited approvingly). Even the Second District has distanced itself from *Learn*'s analysis. See *People v. Riggs*, 2019 IL App (2d) 160991, ¶ 38 (explaining that "a defendant's right to confront witnesses cannot be recast as the State's burden to confront witnesses"); *Garcia-Cordova*, 2011 IL App (2d) 070550-B, ¶ 63 ("Where a defendant does not attempt to cross-examine a witness on her out-of-court statements, he cannot complain that the witness was unavailable for cross-examination.").

¶ 52 Besides being an outlier opinion, *Learn* is factually distinguishable. In *Learn*, the prosecutor cut short the victim's direct examination without introducing accusatory testimony

because the victim cried when the prosecutor asked her questions. *Learn*, 396 Ill. App. 3d at 896-97. Here, by contrast, J.O. answered all questions posed of her by both the State and the defense, and her testimony on direct examination was accusatory. Specifically, J.O. testified that she disclosed in her second interview at Shining Star that her "Papa" had done "a couple different things" to her on "[d]ifferent days." J.O. identified defendant in court as her Papa, and she testified that she told the truth in her second interview. See *Graves*, 2021 IL App (5th) 200104, ¶ 40 (among the reasons for deeming *Learn* distinguishable was that the accuser testified she was truthful in her out-of-court accusatory statement).

¶ 53    In presenting his argument, defendant distinguishes memory-loss cases from cases where the prosecutor does not attempt to elicit incriminating testimony from the complaining witness. Defendant's argument is unconvincing. See *Riggs*, 2019 IL App (2d) 160991, ¶ 35 (rejecting the defendant's argument that "a special set of rules applies" in memory-loss cases). As mentioned above, the prosecutor indeed elicited incriminating testimony from J.O. that she had accused her grandfather of different things and that such accusations were true.

¶ 54    For these reasons, we hold that the trial court did not abuse its discretion or violate defendant's confrontation rights by admitting into evidence J.O.'s February 10, 2021, interview.

¶ 55                    C. The Trial Court's Personal Knowledge

¶ 56    Finally, defendant argues that the trial court denied him an impartial trial by relying on personal knowledge and evidence outside the record. Defendant focuses on the following comments the court made when finding him guilty:

> "Having raised five children myself, I understand how children talk; how they tell stories and at what different ages their communication skills develop.

> The mere fact that [J.O.] didn't make a disclosure in the first video does not mean that something didn't happen. It means that [J.O.] herself was not comfortable telling the story at that time."

Defendant requests that we reverse his convictions and remand for a new trial before a different judge. The State responds that defendant forfeited this argument by failing to object contemporaneously and then reraise the issue in a posttrial motion. Forfeiture aside, the State argues that the court's comments were proper. In his reply brief, defendant asks us not to deem his claim forfeited, as he challenges the court's conduct. Alternatively, defendant asks us to review the claim pursuant to both prongs of the plain-error doctrine.

¶ 57 We deem defendant's claim forfeited. We recognize that we may apply principles of forfeiture less rigidly where a defendant challenges a trial court's conduct. *People v. Dameron*, 196 Ill. 2d 156, 171 (2001). However, by failing to challenge the isolated comments in his posttrial motion, defendant deprived the trial court of the opportunity to clarify its remarks. Accordingly, defendant must seek recourse through the plain-error doctrine. See *People v. Jackson*, 409 Ill. App. 3d 631, 645-46 (2011) (reviewing for plain error a forfeited argument that the trial court improperly relied on matters outside the record).

¶ 58 The plain-error doctrine applies in two situations. The first is "when 'a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error.' " *People v. Sebby*, 2017 IL 119445, ¶ 48 (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)). The other is "when 'a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *Sebby*, 2017 IL 119445, ¶ 48 (quoting *Piatkowski*, 225 Ill. 2d at

565). Typically, the first step in the analysis is to determine whether a clear or obvious error occurred. *Sebby*, 2017 IL 119445, ¶ 49.

¶ 59    In a bench trial, the trial court is permitted to consider its "own life and experience in ruling on the evidence." *People v. Thomas*, 377 Ill. App. 3d 950, 963 (2007). This is no different from what jurors are instructed to do. See Illinois Pattern Jury Instructions, Criminal, No. 1.01 (approved April 30, 2021) (directing jurors to "consider all the evidence in the light of your own observations and experience in life"). At the same time, the court is limited to the record before it when ruling after a bench trial. *People v. Harris*, 57 Ill. 2d 228, 231 (1974). Thus, " '[a] determination made by the trial judge based upon a private investigation by the court or based upon private knowledge of the court, untested by cross-examination, or any of the rules of evidence constitutes a denial of due process of law.' " *Dameron*, 196 Ill. 2d at 171-72 (quoting *People v. Wallenberg*, 24 Ill. 2d 350, 354 (1962)). We assume that the trial court considered only competent evidence, and that assumption is overcome only where "the record affirmatively demonstrates the contrary." *People v. Tye*, 141 Ill. 2d 1, 26 (1990).

¶ 60    The line between permissibly relying on one's own life experience versus improperly relying on private knowledge may not always be clearly defined. Here, however, the trial court's comments fell on the right side of the line. One of the issues in this case was that J.O. did not disclose defendant's conduct when she was first interviewed at Shining Star. Addressing that issue, the judge briefly mentioned her own experience as a mother. This was not improper, and it was consistent with the expert opinions that Cash offered. See *People v. Hamilton*, 361 Ill. App. 3d 836, 841, 849 (2005) (in a case where the parties disputed how the defendant's young daughter ended up in scalding bathwater, the appellate court determined that the defendant was not prejudiced by the trial judge recalling how his own children entered tubs).

¶ 61　　　　　Defendant cites language from cases where courts remanded for new trials based on trial judges relying on facts outside the record. Notably, defendant does not assert that the circumstances here are factually analogous to any of those cases. It will suffice to say that defendant identifies no case where a reviewing court remanded for a new trial based on comments that were remotely similar to what the trial court said here. The court did not commit a clear or obvious error, so defendant is not entitled to relief pursuant to the plain-error doctrine.

¶ 62　　　　　　　　　　　　　III. CONCLUSION

¶ 63　　　　　For the reasons stated, we reverse defendant's conviction on count II. Pursuant to Illinois Supreme Court Rule 615(b)(3) (eff. Jan. 1, 1967), we reduce the conviction on count II to aggravated criminal sexual abuse (720 ILCS 5/11-1.60(b) (West 2020)), and we remand the matter to the trial court for sentencing on that offense. We affirm the judgment in all other respects.

¶ 64　　　　　Affirmed in part and reversed in part; cause remanded with directions.

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lee County, No. 21-CF-36; the Hon. Jacquelyn Dawn Ackert, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Roxanna A. Mason, of State Appellate Defender's Office (Tamara Gilbert, law student), of Springfield, for appellant. |
| **Attorneys for Appellee:** | Charles A. Boonstra, State's Attorney, of Dixon (Patrick Delfino, David J. Robinson, and Rosario David Escalera Jr., of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |