**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230302-U

Order filed September 17, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0302 Circuit No. 10-CF-1119 |
| JONATHAN L. LANKFORD, | ) ) ) | Honorable Frank R. Fuhr, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Justice Holdridge concurred in the judgment.
Presiding Justice McDade specially concurred.

_____

**ORDER**

¶ 1     *Held*: (1) Defendant waived his due process claim by entering a plea of guilty, and (2) postplea counsel complied with Illinois Supreme Court Rule 604(d).

¶ 2     Defendant, Jonathan L. Lankford, argues (1) the Rock Island County circuit court committed plain error when it violated his due process rights and accepted the parties' stipulation to defendant's fitness, and (2) the record refutes postplea counsel's facially compliant Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) certificate. We affirm.

¶ 3                              I. BACKGROUND

¶ 4         The State charged defendant with aggravated battery with a firearm (720 ILCS 5/12-4.2(a)(1) (West 2010)) and attempted first degree murder (*id.* §§ 8-4(a), 9-1(a)(1)). The court appointed the public defender, and on May 13, 2011, counsel raised a *bona fide* doubt regarding defendant's fitness to plead guilty or proceed to trial. On May 18, 2011, the court found a *bona fide* doubt regarding defendant's fitness and ordered a fitness evaluation. On June 22, 2011, defense counsel presented the court with a stipulation to Doctor Kirk Witherspoon's report summarizing defendant's fitness evaluation, in that Witherspoon's testimony would be "consistent with his report and the ultimate conclusion that [defendant] is fit to stand trial[.]" The court accepted the stipulation.

¶ 5         On March 15, 2012, the State amended the attempted first degree murder charge and added a second charge. Defendant entered a partially negotiated guilty plea to one count of attempted first degree murder, and the State agreed to a 35-year sentencing cap and dismissed the remaining counts. Following an inquiry, defendant indicated that he understood the rights he waived by pleading guilty. The court showed defendant his " 'Plea of Guilty and Waiver of Trial.' " Defendant identified his signature and stated that he was "pleading guilty because [he was] guilty." Defendant denied being forced or threatened to enter his plea and agreed that he pled guilty of his own "free will[.]" The court found defendant "knowingly waived his right to trial *** without coercion [and] knowingly entered a plea of guilty, *** without coercion."

¶ 6         The factual basis for the plea stated that defendant went to Brittney Robinson's residence, and she told defendant to "go away." When defendant knocked at the door again, Lea Robinson, Brittney's sister, answered and told defendant to leave, saying that Brittney did not want to speak to him. Defendant attempted to push past Lea to enter the apartment. Brittney stepped between

2

defendant and Lea and told defendant that she "didn't want to have anything to do with [defendant]." Defendant responded, "Fuck this," and shot Brittney twice. The bullets struck Brittney in her chest and abdomen. The court accepted defendant's plea and continued the matter for sentencing.

¶ 7    On March 26, 2012, defendant, as a self-represented litigant, filed a motion alleging ineffective assistance of plea counsel and a motion to withdraw his guilty plea. On April 13, 2012, initial postplea counsel filed an appearance and a "Motion to Withdraw Guilty Plea and Vacate Judgment," alleging that defendant "did not adequately know and understand the plea" at the time he pled guilty and "never had a chance to examine other *** defenses." On October 16, 2012, the court addressed the motion to withdraw the guilty plea, stating that "[t]here was no representation that the defendant was unfit" during the entry of his plea. Postplea counsel represented that the treating psychiatrist who initially found defendant unfit, "was somehow abusing the system, and the State of Illinois pulled his medical license," and he could not be located. Postplea counsel acknowledged that defendant was found fit after this initial finding. The court denied defendant's motion.

¶ 8    On December 3, 2012, defendant filed a second "Motion to Withdraw Guilty Plea." Defendant asserted ineffective assistance of plea counsel for (1) failing to advise defendant that "upon entering a guilty plea, [he] would lose appeal rights"; (2) advising defendant that he faced a sentencing range of 26 to 35 years' imprisonment; and (3) incorrectly informing defendant that he was pleading to aggravated battery with a firearm. Defendant also alleged that he was "heavily medicated" and "not of sound judgement [sic] and mind" during his plea. On December 12, 2012, defendant asserted that the "only reason" he pled guilty was due to plea counsel "threaten[ing]" that if he proceeded to trial he "was going to lose no matter what *** and the judge promised to

3

give [defendant] 40 years." Defendant "was scared, so [he] pled guilty." The court noted that defendant "appear[ed] to be of sound mind and relatively good intelligence." The court denied defendant's motion, concluding that defendant pled guilty "knowingly," and reasoned that it had "warned" defendant when he pled "what the consequences might be" concluding, "[s]o there is just no misunderstanding anywhere."

¶ 9    In sentencing defendant, the court considered his "long history of mental health issues." The court noted that defendant was "very aware in his mind of his view of the facts of that night" and that defendant indicated it was "an accident," which showed the court that defendant "was not incompetent that night. [Defendant] was not unable to control or conform his behavior to the law *** . [Defendant] knew what he was doing *** , because he still knows what he was doing." The court sentenced defendant to 35 years' imprisonment.

¶ 10    On December 28, 2012, postplea counsel filed another "Motion to Withdraw Guilty Plea and Vacate Judgment" and a Rule 604(d) certificate. The motion alleged that plea counsel was ineffective for failing to (1) inquire "into the Defendant's mental health status at the time of the alleged incident" or consult with defendant's treating psychiatrists; (2) speak to defendant's mother regarding defendant's background with learning disabilities; (3) hire a firearms expert to explain defendant's accidental discharge defense; (4) investigate defendant's defense for possessing a firearm; (5) explain defendant's appeal rights following a guilty plea; (6) explain that defendant was pleading guilty to attempted first degree murder and not aggravated battery with a firearm; and (7) investigate whether defendant's schizophrenia diagnosis, prescription medication, and mental disabilities made it "impossible for the Defendant to adequately understand the ramifications of pleading guilty," assist in his own defense, and "comprehend alternative forms of sentencing."

4

¶ 11    At the hearing on the motion, postplea counsel alleged two new ineffective assistance of plea counsel claims, in that plea counsel (1) told defendant that the State would ask for the minimum sentence at the hearing, but the State asked for the maximum sentence, and (2) "bullied [defendant]" into taking the plea bargain and not going to trial. Postplea counsel also asserted that Witherspoon did not complete a competency test during defendant's fitness evaluation. The court responded that Witherspoon "[p]rovided all of the usual testing for issues of mental retardation, competency, intelligence, malingering" and stated that, if defendant "had some competency issue that would have come out in the exam." The court highlighted Witherspoon's finding that defendant's "apparent failure to make a sincere effort during this assessment suggest[ed] very strongly that he was faking" and his conclusion that it was "very likely that [defendant] ha[d] been untruthful in attempting to convey that he is both suffering from extreme cognitive impairment and markedly debilitating psychotic symptoms." The court found Witherspoon's evaluation "very competent[ ]" and "any claims about [defendant's] lack of understanding [have] been undercut by the doctor's very expressed finding of malingering." The court denied defendant's motion regarding his claims of lost rights due to an "inadequate examination" and related ineffective assistance of plea counsel claims for failing to investigate.

¶ 12    Defendant provided testimony related to his claims of ineffective assistance of plea counsel, mental illness, plea, and his recollections of the charged incident. He acknowledged that Brittney was his girlfriend but did not "recall committing an act of violence towards her" or any other violent crimes. Defendant testified that plea counsel "intimidated" defendant until he "gave in" and pled guilty. Plea counsel never asked defendant about his ability to understand and enter a plea agreement. Defendant did not inform the court of his innocence because he "was scared and [he] didn't know what to do," and "was in and out of it." Defendant just responded, "yeah, yeah,

5

yeah, no, no, no" to the court's questions and did not "remember how it went." Defendant did not know what crime he was charged with, pled guilty to, or recall the factual basis. He acknowledged that he claimed plea counsel was ineffective for failing to procure a firearm expert to show that the shooting was an accident because the firearm "fell out of [defendant's] sleeve, it discharged into the floor, [defendant] picked it up and went to put it away and Brittney grabbed the gun and it went off." The court responded, "Okay. So now you know exactly what happened that day."

¶ 13　　Plea counsel testified that during several contacts prior to defendant's plea, he spoke with defendant "extensively" regarding possible defenses. Plea counsel knew that defendant had been hospitalized before the incident, reviewed defendant's mental health records, and pursued a fitness hearing and psychological evaluation. Plea counsel believed it was in defendant's "best interest" to plead guilty because defendant faced a mandatory minimum sentence of 50 years' imprisonment if he proceeded to trial.

¶ 14　　On cross-examination, plea counsel acknowledged that defendant may have said the shooting was accidental but also stated that defendant "changed his story" several times. Plea counsel did not hire a firearm expert following his review of the evidence because "an expert would have disproved [defendant's] theory." While plea counsel had concerns regarding defendant's mental health early in the proceedings, Witherspoon's evaluation resolved these concerns, and "at the plea [defendant] definitely knew what was going on." Plea counsel denied yelling, cursing at defendant, or forcing him to plead guilty. The court found plea counsel's performance to be "equal to but above the standard required by *Strickland*" and denied defendant's motion. Defendant appealed.

¶ 15　　On his first appeal, we vacated the court's denial of defendant's motion to withdraw his guilty plea. We remanded for new postplea proceedings, narrowly finding that postplea counsel's

6

certificate did not strictly comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017), where it failed to expressly state that counsel reviewed the report of proceedings. *People v. Lankford*, 2016 IL App (3d) 140202-U, ¶¶ 11, 15. Our ruling did not "delve into the record" or make any other determinations regarding the motion to withdraw defendant's guilty plea or the following hearing. *Id.* ¶ 15.

¶ 16 On remand, the court appointed new postplea counsel, and ordered counsel to file a new posttrial motion. On September 6, 2019, counsel filed a facially compliant Rule 604(d) certificate and a new "Motion to Withdraw Guilty Plea and Vacate Judgment." The certificate asserted that counsel consulted with defendant to ascertain his claims of error regarding his plea, examined the "report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing[,]" and made the necessary amendments to defendant's motion. In the motion, counsel reasserted the claims made in defendant's 2012 motion to withdraw his guilty plea with minor amendments. Counsel did not include new claims or evidence not previously raised.

¶ 17 On October 1, 2019, counsel informed the court that he wrote defendant "a rather lengthy letter" and later talked to defendant over the phone for approximately one hour to ascertain his claims of error. Afterward, counsel "largely adopted" defendant's prior motion to withdraw guilty plea. Counsel summarized defendant's claims of ineffective assistance of plea counsel for failing to (1) investigate his mental health history, "mental disabilities," and medications at the time of the plea; (2) consult or hire a firearms expert to "discuss the angle of discharge"; (3) investigate defenses regarding defendant carrying a firearm; and (4) review discovery with defendant or explain the waiver of defendant's right to trial and appeal. Counsel also asserted that plea counsel failed to investigate his treating physician. The court issued a written order stating that it considered defendant's motion, the arguments, and "reviewed transcripts of previous hearings"

7

and found "nothing in the record" showing that defendant "did not knowingly and voluntarily enter his *** plea after being fully advised of the rights he was giving up and the consequences of that plea by both his attorney and the Court." The court denied defendant's motion and defendant appeals.

¶ 18                                    II. ANALYSIS

¶ 19                              A. Due Process Violation

¶ 20        On appeal, defendant contends that the court violated his due process rights by accepting the parties' stipulation regarding his fitness without making its own findings. Defendant admits that he forfeited this error by failing to raise the issue in the circuit court but contends that we should review his claim under the second prong of the plain error doctrine. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (to preserve an issue for appellate review, a defendant must object to it at trial and raise it in a posttrial motion); see also *People v. Herron*, 215 Ill. 2d 167, 175 (2005).

¶ 21        At the outset, we acknowledge that neither party on appeal discussed the waiver of defendant's due process claim following the entry of his negotiated guilty plea. However, we find it imperative to consider such waiver. "By entering a plea agreement, a defendant 'forecloses any claim of error. "It is well established that a voluntary guilty plea waives all non-jurisdictional errors or irregularities, *including constitutional ones*." ' " (Emphasis in original.) *People v. Jones*, 2021 IL 126432, ¶ 20 (quoting *People v. Sophanavong*, 2020 IL 124337, ¶ 33 (quoting *People v. Townsell*, 209 Ill. 2d 543, 545 (2004))); see also *People v. Absher*, 242 Ill. 2d 77, 87 (2011) (plea agreements are contracts, and principles of waiver apply equally to them). Accordingly, we find that when defendant entered his plea of guilty, he waived his due process claim. See *Jones*, 2021 IL 126432, ¶ 20. We note that the plain error doctrine does not apply to waived claims, but only applies to forfeited issues, *i.e.* where defendant fails to make a timely claim of error in the circuit

8

court (*People v. Blair*, 215 Ill. 2d 427, n.2 (2005)). *People v. Bates*, 2018 IL App (4th) 160255, ¶ 74.[1]

¶ 22     Nonetheless, defendant contends that he is entitled to plain error review because "issues surrounding defendant's fitness for trial involve a fundamental right." Illinois Supreme Court Rule 615(a) states that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." While the plain error doctrine permits a reviewing court to consider unpreserved errors in certain circumstances, it "is not 'a general saving clause preserving for review all errors affecting substantial rights whether or not they have been brought to the attention of the trial court.' " *Herron*, 215 Ill. 2d at 177 (quoting *People v. Precup*, 73 Ill. 2d 7, 16 (1978)); *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Instead, the plain error doctrine is a narrow and limited exception to the general rules of forfeiture. *Herron*, 215 Ill. 2d at 177.

¶ 23     In the context of a guilty plea, Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) permits a defendant to challenge his plea and plea proceedings through a motion to withdraw a guilty plea. The court should allow defendant to withdraw his guilty plea " '[w]here it appears that the plea of guilty was entered on a misapprehension of the facts or of the law, or in consequence of misrepresentations by counsel or the State's Attorney or someone else in authority ***.' "

_____

[1]Defendant failed to support his request for plain error review with any authority suggesting that the plain error doctrine is applicable to a claim waived by entering a guilty plea. See, *e.g.*, *cf. People v. Thompson*, 158 Ill. App. 3d 860, 861-62, 865 (1987); *People v. Neal*, 179 Ill. 2d 541, 553-54 (1997); *People v. Hill*, 297 Ill. App. 3d 500, 501, 516 (1998); *People v. Mitchell*, 189 Ill. 2d 312, 320, 337 (2000); *People v. Contorno*, 322 Ill. App. 3d 177, 178, 180 (2001); *People v. Cleer*, 328 Ill. App. 3d 428, 431-32 (2002); *People v. Cook*, 2014 IL App (2d) 130545, ¶¶ 9, 20; *People v. Shaw*, 2015 IL App (4th) 140106, ¶¶ 15, 23; *People v. Gillon*, 2016 IL App (4th) 140801, ¶¶ 19, 33; *People v. Smith*, 2017 IL App (1st) 143728, ¶ 81; *People v. Brown*, 2020 IL 125203, ¶¶ 9, 43; *People v. Corbett*, 2022 IL App (2d) 200025, ¶¶ 57, 70; *People v. McDurmon*, 2022 IL App (1st) 181259-U, ¶¶ 13, 62.

*People v. Davis*, 145 Ill. 2d 240, 244 (1991) (quoting *People v. Morreale*, 412 Ill. 528, 531 (1952)). Defendant bears the burden to establish that "the circumstances existing at the time of the plea, judged by objective standards, justified [his] mistaken impression." *Id.* A defendant does not have an automatic right to withdraw his guilty plea. *People v. Jamison*, 197 Ill. 2d 135, 163 (2001). Instead, the circuit court has discretion to allow or deny defendant's request to withdraw his guilty plea. *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009). We will not disturb the court's exercise of discretion unless the court abused its discretion. *Id.* "The timely filing of a motion to withdraw a plea *** 'is a condition precedent to an appeal from a judgment on a plea of guilty.' " *People v. Robinson*, 2021 IL App (4th) 200515, ¶ 11 (quoting *People v. Flowers*, 208 Ill. 2d 291, 300-01 (2003)).

¶ 24        Here, defendant properly filed a motion to withdraw his guilty plea with the circuit court prior to his appeal. See *Robinson*, 2021 IL App (4th) 200515, ¶ 11. However, on appeal, defendant abandoned all claims raised in his motion to withdraw guilty plea. Instead, defendant narrowly argued that the circuit court violated his due process rights by improperly accepting a stipulation to his fitness. Importantly, defendant does not make any assertions in this appeal that his "plea of guilty was entered on a misapprehension of the facts or of the law, or in consequence of misrepresentations." *Davis*, 145 Ill. 2d at 244 (quoting *Morreale*, 412 Ill. at 531). Based on the way defendant has articulated his due process claim, he would not have been entitled to relief by way of motion to withdraw his guilty plea. See *id.*; Ill. S. Ct. R. 604(d) (eff. July 1, 2017). Defendant failed to present a claim that he could have, or should have, raised in a motion to withdraw his guilty plea. See *Herron*, 215 Ill. 2d at 177. While defendant correctly stated that he does not have to prove he was unfit to obtain relief under a motion to withdraw guilty plea, he does need to allege that he entered his plea unintelligently and involuntarily to entitle him to relief under

Rule 604(d). See *Davis*, 145 Ill. 2d at 250. Defendant failed to do so. Defendant does not connect the alleged due process violation to the voluntariness of his plea. Because defendant's due process argument as articulated on appeal would not be cognizable in a motion to withdraw and would not entitle him to withdraw his guilty plea, we decline to review his claim and honor his procedural default.[2] *People v. Jackson*, 2020 IL 124112, ¶ 81.

¶ 25                                                              B. Rule 604(d)

¶ 26        Defendant next argues that the record refutes defense counsel's facially compliant Rule 604(d) certificate. Specifically, defendant contends that the record shows postplea counsel did not substantively comply with Rule 604(d) because, on remand, postplea counsel failed to (1) amend defendant's motion as "necessary for *adequate presentation* of any defects"; (2) attach affidavits or provide any other evidence in support of the motion; and (3) review the record or attempt to obtain defendant's prior medical records.

¶ 27        Our supreme court has held that an attorney must strictly comply with Rule 604(d). *In re H.L.*, 2015 IL 118529, ¶ 8. Rule 604(d) provides:

> "The defendant's attorney shall file *** a certificate stating that the attorney has consulted with the defendant *** to ascertain defendant's contentions of error in *** the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

---

[2]Our finding as to defendant's waiver in this appeal has no bearing on any potential collateral challenges regarding his plea. See *Townsell*, 209 Ill. 2d at 545.

The remedy for counsel's failure to strictly comply with Rule 604(d) is to remand for the filing of a new motion to withdraw guilty plea and a new hearing on the motion. *People v. Stefanski*, 2019 IL App (3d) 160140, ¶ 22. Even where a Rule 604(d) certificate is facially valid, remand is required if the record refutes the certificate because " 'Rule 604(d) contemplates more than the mere *pro forma* filing of a motion.' " *People v. Bridges*, 2017 IL App (2d) 150718, ¶ 10 (quoting *People v. Keele*, 210 Ill. App. 3d 898, 902 (1991)). "Whether counsel complied with Rule 604(d) is a legal question that we review *de novo*." *People v. Gorss*, 2022 IL 126464, ¶ 10. When a challenged guilty plea or sentence is remanded for the filing of a compliant certificate (as in this case), counsel need only file a new motion to reconsider sentence or to withdraw guilty plea if he or she determines that such action is necessary for the adequate presentation of any defects in the proceedings. *People v. Kerkering*, 283 Ill. App. 3d 867, 872 (1996).

¶ 28    On remand, counsel asserted in his facially compliant certificate that he consulted with defendant to ascertain his claims of error regarding the entry of his plea, examined the "report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing," and made the necessary amendments to defendant's motion. Later, counsel informed the court that he consulted with defendant regarding his claims by letter and phone. Counsel outlined the specific issues discussed, including ineffective assistance of plea counsel claims for failing to (1) investigate his history of mental health issues, medications, and mental disabilities; (2) investigate defendant's treating physician for overmedicating patients; (3) consult or hire a firearms expert to testify to alternative explanations for the firearm discharge; (4) investigate other defenses; and (5) explain defendant's waiver of trial and appeal rights. These facts explicitly demonstrate that counsel reviewed the record regarding defendant's claims of ineffective assistance of plea counsel for failing to investigate his claims of mental illness, which included the

12

differing opinions on defendant's fitness before defendant's guilty plea. Defendant fails to point to any affirmative evidence refuting counsel's certificate and in court assertions to support his claim that counsel failed to make inquiries or review the prior proceedings.

¶ 29    We reject defendant's contention that the record refutes the compliant certificate as second postplea counsel "largely adopted" defendant's prior motion to withdraw guilty plea. Importantly, on defendant's direct appeal, we remanded for the narrow issue of initial postplea counsel's technically noncompliant Rule 604(d) certificate. We made no findings regarding defendant's motion to withdraw his guilty plea or the following hearing and did not suggest that reviewing the report of proceedings would reveal new claims or additional support for defendant's existing claims. Moreover, defendant does not state what new claims counsel should have included in the motion on remand. The supporting evidence and affidavits defendant asserts should have been attached to the motion were already included in the record in the form of testimony by plea counsel, defendant, and initial postplea counsel's proffer. As previously stated, the record demonstrates that counsel reviewed the relevant materials to adequately represent defendant's claims of ineffective assistance of plea counsel and mental illness. *Supra* ¶ 28. Instead of refuting the contents of the certificate, the record affirmatively supports strict compliance with Rule 604(d). See *Bridges*, 2017 IL App (2d) 150718, ¶¶ 8, 10. Therefore, remand is not required. See *id.*

¶ 30                                    III. CONCLUSION

¶ 31    The judgment of the circuit court of Rock Island County is affirmed.

¶ 32    Affirmed.

¶ 33    PRESIDING JUSTICE McDADE, specially concurring:

¶ 34    I agree with the majority's decision to affirm the circuit court's judgment in this case. Yet, I write separately to underscore the grave inadequacy of defendant's fitness hearing below.

¶ 35        The due process clause of the fourteenth amendment bars prosecution of a defendant unfit to stand trial. *People v. Johnson*, 2023 IL App (4th) 220201, ¶ 35. A defendant is presumed fit to stand trial, but will be deemed unfit "if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." 725 ILCS 5/104-10 (West 2010). The issue of a defendant's fitness to stand trial may be raised by the circuit court, defense, or State at any time before, during, or after trial. *Id.* § 104-11(a). Once a *bona fide* doubt as to a defendant's fitness has been raised, the circuit court must order an examination of the defendant by at least one licensed physician, clinical psychologist, or psychiatrist, and then, after receiving the report related to the examination, "conduct a hearing to determine * * * the defendant's fitness." *Id.* §§ 104-13(a), 104-16(a).

¶ 36        Although the circuit court's determination that a defendant is fit to stand trial will not be reversed absent an abuse of discretion, "because the issue is one of constitutional dimension, the record must show an affirmative exercise of judicial discretion regarding the fitness determination." *People v. Cook*, 2014 IL App (2d) 130545, ¶ 13. Thus, during a fitness hearing, the circuit court "may consider an expert's stipulated testimony to assess a defendant's fitness but may not rely solely on the parties' stipulation to an expert's *conclusion* that the defendant is fit." (Emphasis in original.) *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 15. Rather than merely rely on the expert's ultimate opinion, the circuit court must analyze and evaluate the basis for that opinion. *People v. Contorno*, 322 Ill. App. 3d 177, 179 (2001). The circuit court must also independently inquire into the defendant's fitness by considering additional evidence such as the expert's report or its own observations of the defendant. *People v. Smith*, 2017 IL App (1st) 143728, ¶ 86.

¶ 37    In *Smith*, the court analyzed whether the defendant's fitness hearing was sufficient, where the parties stipulated to the testimony of the expert who examined the defendant. *Id*. ¶¶ 81–87. The court noted that the defendant's fitness hearing was "brief" and consisted solely of the expert's stipulated testimony, and that the only concluding statement by the circuit court was: "Defendant fit to stand trial." *Id*. ¶ 87. The court then found that, although the circuit court might have determined the defendant's fitness without relying solely on the expert's stipulated testimony, the record did not show whether the circuit court actually conducted an independent inquiry. *Id*. Thus, the court found that the defendant's fitness hearing was insufficient and violated his due process rights. *Id*.

¶ 38    Similar to the circumstances in *Smith*, the fitness hearing conducted by the circuit court in this case was brief and consisted almost solely of the parties informing the circuit court that they stipulated to the qualifications of the expert and that, if the expert were called to testify, he would do so consistent with his report and ultimate conclusion that defendant was fit to stand trial. Upon this presentation by the parties, the circuit court merely stated that it ordered the stipulation and that the case would need to be "put * * * back on the trial list." As in *Smith*, such a record does not show that the circuit court independently inquired into defendant's fitness by considering evidence other than the expert's ultimate conclusion that defendant was fit to stand trial. Thus, defendant's fitness hearing was insufficient and, taken alone, would warrant an outright reversal for violation of his due process rights.

¶ 39    However, I acknowledge, as the majority details, that defendant has pleaded guilty in this case and, consequently, waived any challenge to the adequacy of his fitness hearing. Nevertheless, I believe it important to note that, had defendant not pleaded guilty, then his case would have proceeded below, and if, during those further proceedings, defendant had again raised the issue of

15

his fitness to stand trial, then any subsequent determination by the circuit court regarding his fitness would have been colored by its initial, insufficiently supported finding that defendant was indeed fit. Moreover, even though defendant pleaded guilty in this case, it was still likely that the circuit court's initial determination of fitness colored later, similar determinations below, in so far as defendant later filed multiple motions to withdraw his guilty plea based on his alleged unfitness, all of which were denied.

¶ 40     The purpose of our due process requirements is to ensure "[a] fair trial in a fair tribunal." *People v. Bush*, 2023 IL 128747, ¶ 73. This purpose is not fulfilled where, as here, the circuit court's truncated and infectious fitness "hearing" is exonerated because defendant pleaded guilty, which he might also have been unfit to do.